Andrew A. SMITH and Henry M.
Henderson

v.

STATE EXECUTIVE COMMITTEE OF DEMOCRATIC PARTY OF GEORGIA.

Richard F. MARSH and John Howett

v.

STATE DEMOCRATIC EXECUTIVE COMMITTEE OF the DEMOCRATIC PARTY OF GEORGIA.

Civ. A. Nos. 11709, 11964.

United States District Court
N. D. Georgia,
Atlanta Division.

Aug. 23, 1968.

**372**

Andrew A. Smith and Henry M. Henderson in pro. per.

Charles J. Driebe, Jonesboro, Ga., and Theodore G. Frankel, Atlanta, Ga., for certain members of defendant committee Theodore G. Frankel, Marvin Shoob, Dan Dunwoody, Thomas Whelchel, Upshaw Bentley, and Charles J. Driebe.

Lamar W. Sizemore, Joseph Lefkoff, Heyman & Sizemore, Atlanta, Ga., for named defendant.

Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr., Asst. Atty. Gen., Alexander Cocalis, Asst. Atty. Gen., Atlanta, Ga., for the State of Georgia.

George C. Walsh, Decatur, Ga., Albert M. Horn, Atlanta, Ga., for plaintiffs Marsh and Howett.

Heyman & Sizemore, Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr., Alexander Cocalis, Asst. Attys. Gen., Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

These are two cases filed against the State Executive Committee of the Democratic Party of Georgia by members of the party. No. 11,709 was filed as a single-judge case and in it the plaintiffs contend that they are denied the equal protection guaranteed by the United States Constitution in the administration of the party under its rules and regulations, specifically, that such rights were denied in the selection of delegates to the National Democratic Convention. No. 11,964 was filed as a three-judge case and in it, the plaintiffs likewise attack the rules and regulations affecting the appointment of delegates but also contend that the Georgia Statute (Ga. Code § 34–902) permitting the adoption of such rules and regulations by the State Committee is unconstitutional.

Under such circumstances, a three-judge court was impaneled in No. 11,964 by the Chief Judge of the circuit. In view of the similar questions of law and fact involved, the two cases were consolidated for trial by the district court on July 26, 1968. At trial, it was apparent from the outset that the propriety of three-judge as opposed to single-judge jurisdiction was in doubt. Under the circumstances, the parties agreed that the trial be considered as a concurrent hearing before the two reserving the legal questions for decision. Evidence was offered and stipulated, including the

exhibits previously presented in 11,709 on pending motion for summary judgment. At the close of the trial, both courts denied injunctive relief as to interference with the convention delegation, but reserved the jurisdictional question as well as the underlying equal protection problem raised in 11,964.

*Three-judge question.*

The claimed basis for three-judge relief lies in the constitutional attack on that portion of the Georgia Election Code, delegating party management to the state control committees of the respective parties. It provides, in part:

34–902. Committees of political parties; officers; authority to adopt rules and regulations; election of party officers.—(a) Each political party shall establish and maintain a State executive committee exercising Statewide jurisdiction and control over party affairs, and a county executive committee in each county in which it holds a primary, exercising countywide jurisdiction and control over party affairs. A party may establish and maintain such other committees as it may from time to time deem advisable. The membership of such committees shall be selected in the manner determined by the State executive committee. Each committee shall be presided over by a chairman and shall have a secretary and such other officers as deemed advisable. (b) The State executive committee of each political party shall formulate, adopt and promulgate rules and regulations, consistent with law, governing the conduct of primaries, conventions and other party affairs. No such rule and regulation shall be effective until copies thereof, certified by the chairman, have been filed with the Secretary of State.

■ The three-judge statute (28 U.S.C.A. § 2281) requires such a panel when injunctive relief on constitutional grounds is granted "restraining the enforcement, operation, or execution (a) of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or (b) of an order made by an administrative board or commission acting under State statutes." Moreover, the basis for either situation must rest "upon the ground of the unconstitutionality of such statute" itself. Thus, in any instance, it is the statute which must be substantially attacked, and even a constitutional question involving the propriety of state action or of an administrative rule or regulation alone is insufficient to invoke three-judge jurisdiction. See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1940); Wright, Federal Courts, § 50ff. E. g., Clemmons v. C.O.R.E., 201 F.Supp. 737(3) (E.D.La.1962); Fair v. Adams, 233 F.Supp. 310(4) (N.D.Fla.1964); United States ex rel. Haughton v. Scranton, 257 F.Supp. 557(6) (E.D.Pa.1966).

■ An analysis of the instant case leads to the conclusion that it is but an insubstantial attack on the Georgia statute of the latter category. Of course, No. 11,709 makes no attack at all on the statute. While the petition in No. 11,-964 asks the court "to declare unconstitutional on its face and *as applied*" Georgia Code § 34–902(a) (b), there is no attack upon it by brief, evidence, or argument at trial. It is tacitly conceded that the statute itself is constitutional, but that the rules and regulations are unconstitutional. Under such an indirect attack, there is no need or cause for a three-judge court. Hobbs v. Pollock, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353 (1929); Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); McGuire v. Sadler, 337 F.2d 902(12) (5th Cir.1964); Clark v. Thompson, 204 F.Supp. 30 (S.D.Miss.1962).

■ The absence of a substantial attack on the statute itself negatives plaintiffs attempt to place the rules and regulations into the category "of an order made by an administrative board or commission acting under state statutes."

Cf. Frasier v. Board of Trustees of University of N. C., 134 F.Supp. 589 (M.D.N.C.1955); Sigma Chi Fraternity v. Regents of University of Colorado, 258 F.Supp. 515 (D.C.Colo.1966). The comparison is hardly analogous on the facts, as there is no legal or financial connection between the political parties and the state. And, as seen, the sine qua non is the constitutional complaint against the statute itself, whether it be enforcement directly or through an administrator's order.

■■ Moreover, some *state action* is necessary and some *state officer* must be sought to be enjoined as a party defendants. Wright, Federal Courts, § 50. No action by the state is involved in the political actions complained of and no state officer is concerned. While the petition alludes to the "Governor of Georgia," the evidence reveals that his actions were in his capacity as head of the party (or "gubernatorial nominee" as referred to in the rules) and not as head of the state. See Moody v. Flowers, 387 U.S. 97 at 101, 87 S.Ct. 1544, 18 L.Ed. 2d 643 (1967). Nor is the state chairman a public officer. See Morris v. Peters, 203 Ga. 350, 46 S.E.2d 729 (1948). Thus, the suits do not involve state action by state officials acting in their public capacities.

■ Lastly, even if three-judge actions were required, it would only relate to the injunctive relief, and not to the declaratory judgment claims. The three-judge panel, in fact, has denied the injunction and that feature of the three-judge jurisdictional claim is now moot. For similar results, see Williams v. Virginia State Election Board, 288 F. Supp. 622 (E.D.Va. Three-judge panel, July, 1968); Irish, et al. v. Democratic Farmer-Labor Party of Minnesota, 287 F.Supp. 794 (D.C.Minn. Aug. 1968, aff'd 399 F.2d 119, 8th Cir. Aug. 1968).

For the foregoing reasons, the defendant's motion is granted, and the three-judge court is dissolved.

*Merits.*

■ Remaining for the single-judge court is the substantial question whether the equal protection clause and its "one-man, one vote" sequel applies to the affairs of political parties and, if so, to what extent. E. g., Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Avery v. Midland County Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed. 2d 45 (1968). As is the source of much current comment,[1] the two-party system

---

1. See W. Bradley, The Pyramid of Nominating Conventions and the Constitution: Practical and Theoretical Difficulties with Grass Roots Democracy, 1968 (Unpublished thesis, Harvard Law School Library). For example, Aug., 1968, Nation's Business, page 22:

The national convention evolved out of political necessity and cannot be blamed on or credited to the framers of the Constitution, who hoped to make the choice of a President a nonpartisan affair. The growth of political parties made it necessary for each party to choose its nominee through a caucus of members of Congress. But "King Caucus" fell into disrepute because the popular will seemed thwarted by powerful cliques in Congress.

A great many delegates are not practicing politicians but lawyers, businessmen, civic leaders and housewives. They are, in the main, beholden to party chieftains in their states or localities, and many are selected as delegates on a patronage basis. Their freedom of choice is thus limited, and they are not susceptible to individual persuasion, as many uninformed onlookers tend to believe.

So the object of the candidates' affections in the preconvention search for delegate support is the political leader or boss. Professor Rossiter described the role of these men in this way:

"The many bosses have come, like the few national figures in the Convention, with the common purpose of picking a winner, and they proceed toward this goal with perhaps more unity than one might expect of them. They proceed, in any case, under their own power and at their own speed, conscious to the end of how much more important they are to the party than the party is to them. When the convention is over, they return to their principalities secure in the knowledge that their own positions of

is a political creature of national origin and there is no constitutional or statutory foundation for its existence.

While the reality of its function has long been realized,[2] the only statutory recognition of the system (and that only by oblique reference) is found in such state statutes as Georgia's, many of which were passed in response to the Supreme Court decisions concerned with state action in statewide elections. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). The single possible source of constitutional recognition is found in ARTICLE II, Section 1,[3] dealing with state choice of electors for President and Vice-President, the ultimate fruition of the system.

Thus far, the only authorities in the area are 14th and 15th Amendment cases, dealing with "state action." From Nixon v. Condon, 286 U.S. 373, 52 S.Ct. 484, 76 L.Ed. 984, 88 A.L.R. 458 (1932), United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110 (1944) and their progeny it is

clear that equal protection applies (1) in the actual voting process by general or primary election and (2) in the legislative functions of a state. Conversely, it apparently does not apply in non-legislative functions of a state. Compare Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) with Sailors v. Board of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed. 2d 650 (1967). Nor does it apply in the administration of the judiciary. New York State Ass'n. of Trial Lawyers v. Rockefeller, 267 F.Supp. 148 (S.D.N.Y. 1967). And, the inequities of the electoral college are an exception to the doctrine, by virtue of its constitutional foundation. Penton v. Humphrey, 264 F.Supp. 250 (Three-judge S.D.Miss. 1967). However, the voting cases were placed on the inhibitions against racial discrimination in the 14th and 15th Amendments, and to functions of the state, and not those of a political party.

How far, then, does the court's jurisdiction extend beyond the actual voting process and governmental action into party affairs? Previously and currently, the courts demonstrate a reluctance to enter yet another "political thicket",

power depend only peripherally, or not at all, on the results of the Presidential canvass."

By the time the convention formally opens, the various committees—resolutions (platform), rules, credentials and permanent organization—have done their work and are ready to submit it to assembled delegates for approval. In the recent past, the big fights have occurred over features of the platform and the credentials of the delegates.

Query: Can any court, state or federal, exercise jurisdiction over the credentials committee of a party or its national convention in assembly?

2. "It is a matter of common knowledge that the great mass of the American electorate is grouped into political parties * * *. So strong with the great majority of voters are party associations, so potent the party slogan, so effective the party organization, that the likelihood of a candidate succeeding in an election without a party nomination is practically negligible. As a result, every voter comes

to the polls on the date of the general election confined in his choice to those few candidates who have received party nominations * * *. As a practical matter, the ultimate choice of the mass of voters is predetermined when the nominations have been made." Mr. Justice Pitney, concurring in part in Newberry v. United States, 256 U.S. 232, 285–286, 41 S.Ct. 469, 484, 65 L.Ed. 913 (1921).

3. Which provides:
Section 1. The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows

Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

and in one fashion or another have left the responsibility on the party itself. See Ray v. Blair, 343 U.S. 214, 72 S.Ct. 654, 96 L.Ed. 894 (1951) (Loyalty oath approved); Voltaggio v. Caputo, 210 F. Supp. 337 (Three-judge D.N.J.1962) (protection for use of party label on ballot approved); Lynch v. Torquato, 343 F.2d 370 (3rd Cir.1965) (nomination for vacancy in office by county committee approved); Canton v. Todman, 259 F. Supp. 22 (D.C.V.I.1966) (Party nomination binding on election supervisor for ballot purposes). Of these, Judge Hastie's articulate comments in *Lynch* bear repeating:

> "But the citizen's constitutional right to equality as an elector, as declared in the relevant Supreme Court decisions, applies to the choice of those who shall be his elected representatives in the conduct of government, not in the internal management of a political party. It is true that this right extends to state regulated and party conducted primaries. However, this is because the function of primaries is to select nominees for governmental office even though, not because, they are party enterprises. The people, when engaged in primary and general elections for the selection of their representatives in their government, may rationally be viewed as the "state" in action, with the consequence that the organization and regulation of these enterprises must be such as accord each elector equal protection of the laws. In contrast, the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action which must satisfy the requirements of Gray v. Sanders."

Even so, the selection of party machinery in "an undemocratic way" concerned Judge Hastie and possibly "might have an arguable constitutional claim." (at page 373). However, the only case found which goes beyond the primary voting process is Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). There, the "nomination" of candidates *for* the Democratic Primary by means of a referendum of the unofficial county Jaybird Association from which Negroes were excluded, was deemed unconstitutional. Again, the basis was voting rights under the 15th Amendment.

■ Thus, there is no known case to the effect that any jurisdiction exists over the internal rules or management of a political party. Perhaps the presence of obvious political and legislative remedies and the argument that legislative and primary nomination has already afforded equal protection belies the need therefor. The only theory for doing so would be to extend the political reality theory one giant step further from the primaries into party control. As has been pointed out in Williams v. Virginia State Election Board, supra, the "unit rule" is inherent in all political matters and the winners always take all and the losers always lose all. Thus, no one voting for a losing candidate is entitled to 40% representation in the Governor's chair, or 35% voice in Presidential decisions, or even a 25% vote on the policies of a county commission. Everyone is, however, entitled to a proportionate vote in the selection of the winner. Unfortunately, he is not always entitled to this in party control, but the nominee assumes absolute command of party management upon his selection to represent the group at the polls. In this connection, the Georgia Democratic party is about midway among the systems in vogue. While its county committees are determined by popular vote, its central state committee is made up of 200 members, one-half of which are popularly elected by such popularly elected county committee members (the Congressional District members); and the other one-half by the Party Chairman "with the advice and consent of the Gubernatorial Nominee." In addition, there is a quadrennial convention of the party following each Governor's election. Va-

cancies during the four-year committee term are likewise filled by the Party Chairman "with the advice and consent of the Gubernatorial Nominee." Despite any specific complaint about a particular rule (as here), the sole legal power in party affairs is vested by state statute in this central committee. Thus, the real remedy for any such complaint lies in the choice of the committee itself. Ideally, then, its entire membership should be chosen by popular election concurrent with the gubernatorial primary. However, the central committee is subject to resolution of the State Convention.

Under such an arrangement, assuming jurisdiction exists at all, equal protection would be afforded either by (1) a popularly-elected central committee or (2) an open convention, or a convention limited to popularly-elected delegates. This court shares Judge Hastie's concern, but is constrained to agree with him that these are the limits of "arguable constitutional claims" on the subject. Under the evidence here, the hypothetical test is satisfied as it is uncontradicted by the record that the 1966 state convention was an "open convention." Any interested party thus had an opportunity, with or without a special invitation, to make his vote count in the party affairs and the rule-making process. Here the result was happenstance as the present party rules designate the convention delegates as "members of the State Democratic Executive Committee, members of the Congressional Democratic Executive Committees, and members of the local County Democratic Executive Committees, and *such other delegates as may be designated by the Democratic Gubernatorial Nominee.*" (Rule 53). To their credit, the last two nominees of the party have designated all party members as delegates, thus creating an open convention. There are obvious defects in the wording of the present rules and obvious physical limitations if the designation is accepted literally by all members of the party. Consequently, the defendant committee is admonished to consider the adoption of rules which will insure reasonable protection within the limits stated. Whether required by law or not, such a change is in keeping with the spirit and tradition of the democratic process.

For the reasons stated, the relief sought is denied.

It is so Ordered.