Carl MAXEY, Paul Pedersen, Michael Saslow, Fred T. Haley, James Michael Ryherd, Thomas McCarthy, Lawrence Wilets, Plaintiffs,

v.

**WASHINGTON STATE DEMOCRATIC COMMITTEE and Dwight Spracher, Chairman, Defendants.**

No. 7838.

United States District Court,
W. D. Washington,
at Seattle.

Oct. 26, 1970.

Kenneth A. MacDonald, Seattle, Wash., for plaintiffs.

Daniel Brink, Seattle, Wash., for defendants.

## OPINION

ALFRED T. GOODWIN, District Judge:

This is an action by a group of registered voters who seek redress under the Civil Rights Act, 42 U.S.C. § 1983, of an alleged deprivation of their right to vote. The case is before the court on joint motions for summary judgment.

Several of the plaintiffs were delegates from the state of Washington to the 1968 Democratic National Convention. Others were not selected as delegates, but all hold the position of Democratic precinct committeeman. The nominal defendants include the Washington State Democratic Committee, which is created by state law to represent the Democratic voters of the state. (A related case decided today, Dahl v. Republican State Committee, 319 F.Supp. 682 (W.D.Wash.1970), deals with the constitutionality of the statute creating the state committee.)

Jurisdiction is vested in this court by virtue of 28 U.S.C. § 1343(3) and (4). The complaint alleges that certain practices of the state committee result in unconstitutional dilution and infringement of voting rights. The plaintiffs allege that the state committee, under authority delegated by statute, has denied the plaintiffs in the more populous areas of the state equal participation in the presidential-nomination processes. Declaratory and injunctive relief is also sought pursuant to 28 U.S.C. §§ 2201 and 2202.

Plaintiffs' basic contention is that the one-man-one-vote principle enunciated by the Supreme Court in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), applies to a state political-party-convention system the same as it applies to a party primary.

The Legislature has delegated to political party organizations in the state of Washington certain powers:

"*Authority—Generally.* Each political party shall have the power to:

(1) Make its own rules and regulations;

(2) Call conventions;

(3) Elect delegates to conventions, state and national;

(4) Fill vacancies on the ticket;

(5) Provide for the nomination of presidential electors; and

(6) Perform all functions inherent in such an organization:

*Provided,* That in no instance shall any convention have the power to nominate any candidate to be voted for at any primary election." RCW .29.-42.010.

The state committee of each major political party consists of one committeeman and one committeewoman from each county, elected by the county committee. The county committees consist of the precinct committeemen for each party from the several voting precincts of each county. A precinct committeeman or committeewoman is elected every two years or appointed by the county chairman as provided for in RCW 29.42.050.

Pursuant to the general grant of authority in RCW 29.42.010, the Democratic State Committee has, for the past fifty years, provided for the election of delegates to the state and national conventions through a statewide convention system.

The state committee describes the convention system as follows:

"Delegates to the national convention are elected through a series of meetings. Democrats attending caucuses in precincts elect delegates to the county conventions, who in turn elect delegates to the state convention. These delegates then meet in congressional district caucuses before the state convention to elect delegates from among their number to the national convention. These are then approved at the state convention where other delegates are elected at large.

"Each county central committee organizes its own county convention, and the state committee organizes the state convention * * *." Washington State Democratic Committee circular, "The Convention Process," January 18, 1968.

State conventions are held every two years. In preparation for the presidential election, the state committee promulgates rules for convening and conducting the quadrennial convention and the election of state delegates to the national convention.

The state committee apportions the number of state-convention delegates among the county party organizations. The formula for making such an apportionment begins with a total number of delegates to the state convention (1,398 in 1968). Each county is customarily allotted a certain number of basic delegate votes (five in 1968). Each county is also allowed five votes for each state senatorial district within its boundary and one for each twenty per cent of the county's population encompassed by a district covering more than one county. Each county receives one additional delegate vote for each 1,000 votes or major fraction thereof cast for the party's presidential nominee at the last presidential election, and one delegate vote for each 2,000 vote plurality the party's presidential nominee achieved over his opponent in that county. Finally, a number of ex-officio delegates (usually state and national elective officials who have, of course, been elected on a one-man-one-vote basis) are designated and appointed by the state committee.

At the county level, the county central committee operates as the functional equivalent of the state committee in calling and organizing the county convention and apportioning its delegates among the precincts.

Early in a presidential-election year, the chairman of the county committee calls a county convention for the purpose

of electing delegates to the state convention. In large counties the apportionment of delegates to the county convention is determined by the county committee. Delegates include the precinct committeemen and all other delegates elected at the precinct caucuses convened by the precinct committeemen. In the smaller counties, an open convention is held, with all Democratic voters invited to attend and participate in the election of state-convention delegates.

In the largest counties state legislative district meetings are held in order to nominate state convention delegates, and these are then approved by the county convention. All county delegates elected at the precinct caucuses held within the state legislative district are invited to attend district meetings, and the district meeting in effect becomes a subcommittee of the county convention and suggests state-delegate nominees for county-convention approval.

At the state level, the congressional district caucus is the functional equivalent of the state legislative district meeting. The congressional district caucus takes place after the precinct caucuses and after the county conventions but before the state convention. Officially convened by the state Democratic chairman, the congressional district caucus elects the district's allotted delegates and alternates to the national convention. Only the elected delegates to the state convention from the counties making up the respective congressional districts are eligible to attend and vote at the district caucuses.

The final step in the process of electing delegates to the national convention is the state convention, attended, as noted, by delegates elected from the county conventions. The primary purpose of the state convention is to ratify the national-delegate nominees from the congressional district caucuses. A certain number of at-large delegates are also elected by the state convention. The ex-officio delegates appointed by the state Democratic chairman then fill out the

remaining vacancies in the Washington state delegation to the Democratic National Convention. There is no challenge before the court as to these ex-officio delegates.

In July of 1970, a Democratic state convention was convened pursuant to the procedures outlined above. (No national-convention delegates were elected at the 1970 convention, because a state convention will be convened in 1972 for that purpose.) A resolution was adopted by the 1970 state convention which urged that "the procedure and call for the delegate selection to all caucuses and conventions, held by the Democratic Party in 1972 shall strive for maximum participation and fairness * * *." The resolution suggested procedures which, if adopted by the state committee, would bring about the kind of delegate allocation sought by the plaintiffs in this action, and would bring the delegate selection procedure into conformity with the one-man-one-vote principle.

There is no real dispute as to the unrepresentative nature of the convention system under the present delegate-allocation formula used by the state committee. It is therefore not necessary to enter into a detailed analysis of population estimates and alleged disparities of representation except to note that King County and the other more populous counties are seriously underrepresented in the selection process for the Washington delegation to the national nominating convention.

At the 1968 state convention, for example, each delegate from King County represented some 2,800 voters based on total population, and 670 "Democrats" based on 1964 presidential voting, while each delegate from San Juan County represented some 420 total voters and 125 Democrats.

■ Several initial obstacles to any consideration of the merits of this case have been asserted by the defendant state committee. I have no doubt that this case presents a justiciable controversy, despite defendant's contentions to

the contrary. One element of justiciability involves the political-question doctrine. The scope of this doctrine has been greatly narrowed in recent years. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Mottola v. Nixon, 318 F.Supp. 538 (N.D. Cal., 1970). I find that this action is not precluded on the ground that it involves a nonjusticiable political question.

 The defendant argues that no judicially manageable standards for resolving this dispute exist and that any relief granted therefore would be impossible to administer. The issue, of course, is whether "the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." Baker v. Carr, 369 U.S. at 198, 82 S.Ct. at 700. I am satisfied that standards do exist and that the right asserted can be judicially protected. Baker v. Carr, 369 U.S. at 226, 82 S.Ct. 691. In Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), the Court disposed of the issue of judicially manageable standards and nonjusticiability summarily, and I intend to do the same here. As to the alleged difficulty in granting relief in this case, delegate-apportionment formulae appear to be no more difficult to review and supervise than the state legislative-reapportionment formulae involved in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). In any event, the Declaratory Judgment Act authorizes judicial review here. A district court may "declare the rights * * * of any interested party * * * whether or not further relief is or could be sought." 28 U.S.C. § 2201.

Defendant next contends that no case or controversy exists and that plaintiffs have no standing to bring this action. Because the delegate-selection formula for the 1972 convention has not yet been announced, the defendant says the plaintiffs do not know whether they have suffered any injury.

 There is no question that plaintiffs, who are members and officers of the Washington State Democratic Party and who regularly participate in the election of state and national convention delegates, have a deep personal stake in the outcome of this case. They should not be denied relief because they have brought their action while there is yet time to determine, declare, and implement constitutional requirements with respect to delegate selection. The failure by the plaintiffs in Irish v. Democratic-Farmer-Labor Party of Minnesota, 399 F.2d 119 (8th Cir. 1968), to bring their action within a sufficient time to permit meaningful judicial relief was a significant factor in the court's decision in that case to deny relief. 399 F.2d at 120.

The Washington State Democratic Committee has been employing the delegate-selection formula under challenge here since 1920, and while it may change the formula for 1972, I cannot assume that the committee will do so. I do believe, however, that the resolution adopted by the 1970 state convention is sufficient evidence of the concern of the Democratic Party of the state of Washington about its delegate-selection procedures to justify some confidence that once the constitutional requirements have been enunciated by this court the party will implement them before 1972 without further judicial action. Plaintiffs have standing to sue, and a case or controversy does exist.

I have also concluded that this action is not mooted by the fact that the 1968 elections are past and the 1972 delegate-selection procedures are yet to be announced. Neither does the fact that state law does not compel the type of delegate apportionment used by the state committee persuade me to hold that until a selection formula is announced for 1972 no right to relief exists. As the Supreme Court said in Gray v. Sanders,

372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963):

" * * * [T]he voluntary abandonment of a practice does not relieve a court of adjudicating its legality, particularly where the practice is deeply rooted and long standing. For if the case were dismissed as moot, appellants [defendants] would be 'free to return to * * * [their] old ways.' United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303." 372 U.S. at 376, 83 S.Ct. at 806.

See, also, Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

█ No issue of state action has been presented in this action, and I therefore pass quickly over the state-action requirement. The question of state action has been before other courts in similar cases. Irish v. Democratic-Farmer-Labor Party of Minnesota, 287 F.Supp. 794, 802 (D.Minn.), aff'd 399 F.2d 119 (8th Cir. 1968); Smith v. State Executive Committee of Dem. Party of Ga., 288 F.Supp. 371 (N.D.Ga.1968). The analogy between the state-convention process for nominating party candidates and the state primary election system for nominating party candidates for public office is so compelling that I believe the following cases dispose of the state-action requirement. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944).

" * * * The party may, indeed, have been a mere private aggregation of individuals in the early days of the Republic, but with the passage of the years, political parties have become in effect state institutions, governmental agencies through which sovereign power is exercised by the people * * *." Rice v. Elmore, 165 F.2d 387, 389 (4th Cir. 1947), cert. den. 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948).

█ On the merits of this case, I hold that the one-man-one-vote principle does apply to the manner of sending delegates to the state and national conventions. Plaintiffs' rights to vote and to have their votes weighted equally with all other votes have been unconstitutionally denied and diluted under the system presently employed by the defendant state committee.

It is a political fact of life that the effectiveness of one's participation in the general election is in large part determined by the opportunity for participation at the nominating stage. As Mr. Justice Pitney stated in his concurring opinion in Newberry v. United States, 256 U.S. 232, 285–286, 41 S.Ct. 469, 484, 65 L.Ed. 913 (1921):

" * * * [T]he great mass of the American electorate is grouped into political parties, to one or the other of which voters adhere with tenacity, due to their divergent views on questions of public policy, their interests, their environment, and various other influences, sentimental and historical. So strong with the great majority of voters are party associations, so potent the party slogan, so effective the party organization, that the likelihood of a candidate succeeding in an election without a party nomination is practically negligible. As a result, every voter comes to the polls on the day of the general election confined in his choice to those few candidates who have received party nominations, and constrained to consider their eligibility, in point of personal fitness, as affected by their party associations and their obligation to pursue more or less definite lines of policy, with which the voter may or may not agree. As a practical matter, the ultimate choice of the mass of voters is predetermined when the nominations have been made * * *."

The presidential nominating process can and should be one of the most readily available and most effective means of accomplishing significant political change in this country. Close constitutional

scrutiny therefore is in order wherever state and party procedures offer the voter something less than the fullest possible participation in the nominating process.

This case presents the question reserved by the Supreme Court in Gray v. Sanders, 372 U.S. 368, 378 n.10, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963): whether or not the one-man-one-vote principle applies when the convention process, instead of the primary system, is used for nominating candidates.

If presidential candidates or the national convention delegates who nominate them were selected in the state of Washington in a primary election, any weighted voting system which gave a greater voice to some voters than to others because of geographical location would be arbitrary, unlawful, and in violation of the equal protection clause of the Fourteenth Amendment. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). It should make little difference that a convention system instead of a primary system is used to accomplish the same disenfranchising result.

While it is true that the constitutional scheme for electing the President creates no right of popular participation, all states have created such a right. Once the state has undertaken to provide for popular elections, all votes must be equally valued.

■ All integral phases of the state-created presidential-election process must conform to the one-man-one-vote principle. Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Gray v. Sanders, 372 U.S. 368, 380, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944).

The nominating phase of a state-created presidential-election process is obviously a critical one. Indeed, it is often determinative of the entire election. The selection of delegates to the national convention is the first phase of the state-wide presidential election, and it culminates in the choice of electors for the Electoral College committed to a party candidate for President.

If the statement of the Supreme Court in Gray that "the concept of political equality in the voting booth contained in the Fifteenth Amendment extends to all phases of state elections" (emphasis added), 372 U.S. at 380, 83 S.Ct. at 808, has meaning, it must apply to those phases of state elections in which candidates are nominated by the convention system as well as to those in which candidates are nominated by primary elections.

A contrary result would permit evasion of the one-man-one-vote principle announced in Gray by simply substituting a weighted-voting or unit-voting convention for the primary elections system of nominations under consideration in Gray. Such an evasion of so important a principle could not long be tolerated.

The question next arises, when does the state-created presidential election process begin? Obviously, the process is a continuing one that begins for some voters when they register to vote. For the purposes of this case, I hold that the process begins when the state committee allocates the delegates to the state convention. It is at this point that the strictures of Gray and the one-man-one-vote principle require that the allocation be made on some rational population basis. Either total population or total Democratic voters as measured by the Democratic vote in the last presidential election should satisfy the equal-vote requirement.

■ It follows that equal voter participation also requires the county central committees, in those larger counties which do not hold "open" county conventions, to apportion the delegates to the county convention among the precincts on the same rational basis as that required of the state committee in apportioning state convention delegates.

Defendant argues that the most recent pronouncement by the Supreme

Court in the voting rights area, Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), indicates that an application of the one-man-one-vote principle to the case at bar would be improper. I disagree. Mr. Justice Black stated the holding of the *Hadley* case as follows:

" * * * We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of · the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials * * *." 397 U.S. at 56, 90 S.Ct. at 795.

█ This holding is entirely consistent with the rule I adopt in this case. RCW 29.42.010(3), which reads, "Each political party shall have the power to * * * [e]*lect* delegates to conventions, state and national" (emphasis added), clearly evidences a decision by the state to require that political parties select convention delegates by popular election rather than by appointment. That a "popular election" need not involve the total voting population and may involve only intraparty elections is made clear by the Court's holding in Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), which applied the one-man-one-vote rule to such an election.

The rule that courts are generally reluctant to interfere with the internal affairs of a political party, Lynch v. Torquato, 343 F.2d 370 (3d Cir. 1965), has no application in this context. The court is not dealing here with an attack upon the state party organization or its administrative machinery. Rather, the court is confronted here with certain party procedures which dilute and debase the participation of voters in the presidential nominating process, which is a critical stage of the state-created presidential-election process.

Defendant urges that this court follow two recent cases presenting very similar facts: Irish v. Democratic-Farmer-Labor Party of Minnesota, 287 F.Supp. 794 (D.Minn.), aff'd 399 F.2d 119 (8th Cir. 1968); Smith v. State Executive Committee of Dem. Party of Ga., 288 F.Supp. 371 (N.D.Ga.1968). The court in *Irish* was under time pressures which precluded effective relief in that case and which do not pose a problem in the case at bar. But this distinction does not completely dispose of either *Irish* or *Smith*. Both appear to hold that as long as the one-man-one-vote principle is satisfied in the initial voting procedures at the precinct level, any failure of representativeness that may be introduced at higher levels does not violate the requirements of the equal-protection clause. I agree that the one-man-one-vote principle must be applied at the precinct level, but insofar as *Irish* and *Smith* hold that this is the only level to which it applies I think those cases are inconsistent with the principles announced in *Reynolds* and *Gray*. Each stage of the delegate-selecting process is part of an over-all unitary plan which ultimately results in the selection of national delegates and, shortly thereafter, Electoral College electors. Decisions made within the party apparatus to accord more weight to some counties than to others are not mere administrative decisions which can legitimately be taken out of the hands of the voters. Such decisions effectively deny voters the right to an equally weighted vote. If the teaching of the *Reynolds* and *Gray* cases could be subverted simply by imposing an unrepresentative convention hierarchy upon a system which requires equal voting only at the lowest level, the one-man-one-vote principle would be illusory. Once the state is committed to an electoral method of selection at the base line,

it cannot distort the popular will by introducing unrepresentative procedures at higher levels of the process. Comment, Constitutional Safeguards in the Selection of Delegates to Presidential Nominating Conventions, 78 Yale L.J. 1228, 1240 (1969).

Defendant contends that the Democratic Party has a legitimate interest in apportioning its delegates to the state convention on a basis other than population. This interest, we are told, is the party's need to build a strong organization throughout the state by involving all county organizations equally, and its desire to reward local party organizations on the basis of their ability to produce Democratic votes. The need to build a strong party organization can be served in other ways than by giving the votes of party members from rural areas greater weight at the state conventions than those of members from urban areas.

The unfortunate consequences to the party and to the nation of failing to give to each interested citizen an opportunity to participate equally with all others in the state and national presidential nominating convention has been recognized by the Committee on Party Structure and Delegate Selection of the Democratic National Committee in its report, "Mandate for Reform," April 1970, p. 49:

> "If we are not an open party; if we do not represent the demands of change, then the danger is not that people will go to the Republican Party; it is that there will no longer be a way for people committed to orderly change to fulfill their needs and desires within our traditional political system. It is that they will turn to third and fourth party politics or the anti-politics of the street."

Defendant also urges that political parties represent ideas, not population. But ideas can only be presented if the people espousing them are given a voice that will be heard. In the context of the deliberations of a nominating convention, state or national, it is unrealistic to assume that meritorious ideas or the candidates who adopt and represent them will be successful without the political weight behind them which they would otherwise command by virtue of sheer numbers.

Finally, the court must face the question of appropriate relief. There is no need at this time to undertake to determine what the appropriate delegate apportionment formula for the state and county conventions might be in order to bring the procedures into compliance with the one-man-one-vote principle. Nor is it necessary to decide the proper basis for apportionment, whether total population, or total Democratic votes counted in the 1968 presidential elections. These questions are best decided in the first instance by the state committee, which is much closer to its party and its needs than is any court. Detailed injunctive relief is not now necessary in order to insure vindication of the constitutional rights of the plaintiffs.

█ Accordingly, the formula used in the past by the Washington State Democratic Committee to apportion state and county convention delegates among the various geographical subdivisions of the state of Washington violates plaintiffs' rights under the equal-protection clause of the Fourteenth Amendment. The use of such a formula in the future should be permanently enjoined. The state committee should be required to adopt new formulae which comply with the spirit of the one-man-one-vote principle.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## JUDGMENT

Pursuant to the opinion filed this day, it is ordered:

1. Defendant Washington State Democratic Committee, in apportioning

Washington State Democratic Convention delegates to county party organizations in the state of Washington during presidential election years, is ordered and directed to apportion such delegates in a manner that is consistent with the one-man-one-vote principle.

2. The past practice of the defendant Washington State Democratic Committee to apportion an equal number of "basic votes" to each county and to apportion "bonus votes" to counties on the basis of party plurality in the last presidential election is not consistent with the one-man-one-vote principle.

3. Defendant Washington State Democratic Committee is ordered to adopt appropriate rules requiring all county Democratic central committees to apportion delegates to their respective county Democratic conventions held during presidential election years in a manner consistent with the one-man-one-vote principle.

4. The holding of an open county convention, at which all Democrats are equally entitled to participate and vote, is consistent with the one-man-one-vote principle.

5. The Washington State Democratic Committee is ordered, in the event that it appoints, rather than provides for the election of, delegates to Washington Democratic State Conventions held during presidential election years or to Democratic National Conventions, to appoint as delegates only persons elected according to the one-man-one-vote principle to the positions they are holding at the time of their appointment.

6. The Washington State Democratic Committee is ordered and directed to adopt appropriate rules requiring all county Democratic central committees, in the event they appoint, rather than provide for the election of, delegates to county Democratic conventions held during presidential election years, to appoint as delegates only persons elected according to the one-man-one-vote principle to the positions they are holding at the time of their appointment.