Edmund G. SEERGY et al., Plaintiffs-Appellees,

v.

KINGS COUNTY REPUBLICAN COUNTY COMMITTEE et al., Defendants-Appellants,

and

Louis J. Lefkowitz, Attorney General of the State of New York, Intervenor-Appellant,

and

Charles H. Lanigan, Chairman of the Republican State Committee, Intervenor-Appellant.

Nos. 733–735, Dockets 72–1289, 72–1313 and 72–1315.

United States Court of Appeals, Second Circuit.

Argued March 24, 1972.

Decided April 20, 1972.

Harold L. Fisher, Brooklyn, N. Y. (Albert J. Millus, New York City, on the brief), for defendants-appellants Kings County Republican County Committee, John R. Crews, Anthony N. Durso, Peter Deutsch and Executive Committee of the Kings County Republican County Committee.

Daniel M. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for intervenor-appellant pursuant to Executive Law, McKinney's Consol.Laws, c. 18, § 71.

Arthur H. Schwartz, New York City (Charles G. Moerdler, New York City, on the brief), for intervenor-appellant Charles H. Lanigan as Chairman of the New York Republican State Committee.

Walter C. Reid, New York City (Raymond McKaba and Salvatore D'Ambrosio, New York City, on the brief), for plaintiffs-appellees.

Before HAYS, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

We are called upon once again to delve into the intricacies of the New York Election Law, this time to determine whether a procedure authorized by it for the election and voting powers of members of a county political committee operate to deprive duly registered voters of their constitutional right to equal protection of the laws.

The plaintiffs below, enrolled Republican voters and members of the Kings County Republican County Committee, brought this action under 42 U.S.C. § 1983 [1] to challenge the system by which committeemen's votes in the Kings County Republican County Committee

---

1. The plaintiffs also relied on 42 U.S.C. §§ 1985(2), 1985(3) and 1988, and the Declaratory Judgment Acts, 28 U.S.C. §§ 2201, 2202. Jurisdiction was based upon 28 U.S.C. §§ 1331, 1343(3) and 1343(4).

are counted. Specifically plaintiffs contend that a rule adopted by that Committee pursuant to § 12 of the Election Law, McKinney's Consol.Laws, c. 17, which gives each county committee member an equal vote rather than a vote weighted according to the number of Republican voters in the district he represents, violates the "one-man, one-vote" principle established by the Supreme Court as a voter's constitutional right in the election of government officials. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 663 (1962); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821 (1963); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). Upon the undisputed facts Judge Dooling denied defendants' motion for summary judgment dismissing the complaint and granted plaintiffs' similar motion to the extent of declaring invalid the aforementioned Committee rule and the language of § 12 which authorized its adoption. We affirm in part and reverse in part.

A full understanding of the plaintiffs' constitutional claims requires some discussion of the function of party county committees and of the pertinent sections of the New York Election Law. The political subdivisions of the State of New York consist of counties, each of which is subdivided into assembly districts. Each assembly district, in turn, is divided into election districts. The election district is the basic unit of representation within the state's electoral system. Each of the major political parties gears itself to this structure, conducting primary elections in which candidates for party nomination are designated by means of petitions signed by a relatively small number of enrolled voters of the party. The enrolled members of the party then select candidates for the general election by casting primary ballots, with each voter's ballot having equal voting strength.

Each political party conducts its business in the State of New York through committees. The New York Republican Party, for instance, acts through a state committee and county committees. Each county committee is elected by enrolled members of the Republican Party within that county. Except in rare instances the county committee does not perform any electoral functions on behalf of its enrolled party members. Its function is essentially to handle the party's internal affairs at the county level, including the promotion of Republican candidates and policies for consideration by its members, development of party programs, solicitation of uncommitted voters to enroll in the Republican Party, raising of campaign funds, manning of the polls at election time, distribution of party literature, canvassing voters, electioneering, and similar activities.

In rare instances, the county committee may choose the party nominee or play a major part in that determination. The committee, for instance, may nominate a candidate to fill a vacancy in an elective office (except for statewide offices) which occurs after the fifth Tuesday preceding the fall primary by majority vote of a quorum. Election Law § 131(7). It may nominate Republican Party candidates for other than statewide offices to be filled at a special election, Election Law § 131(6); Rules of the Kings County Republican County Committee, Art. IV, § 1(a), and may fill vacancies in nominations made at a fall primary unless the party rules provide otherwise. Election Law § 140(3). The county committee must also consent before the party nomination for other than statewide office may be given to a person not enrolled in the party. Election Law § 137(4). Most often, however, these duties fall to the Executive Committee, which in Kings County, "at all times when the County Committee is not in actual session, shall have, possess and exercise all the rights, privileges, powers and duties which the County Committee may have and possess, except where such rights, privileges, powers and duties are by statute vested in or imposed upon said County Committee exclusively,"

Rules of the Kings County Republican County Committee, Art. IV, § 1(e).

Under state law each political party by appropriate rule determines for itself which committees other than state and county committees shall be formed and in what manner such committees shall be organized. Election Law § 14. The Election Law, however, prescribes the way in which state and county committees are to be established. Section 12 [2] provides that the county committee shall consist of two members elected from each election district within the county, and that the voting power of each member thus elected "shall be in proportion to such party vote" in his election district. The same section, however, also allows each county committee to choose an alternative election procedure whereby up to two additional members (up to four members in all) may be elected from each election district. In counties where this option to elect additional committee members is exercised, the Election Law requires that "each member [of the county committee] shall have one vote."

The defendant Kings County Republican County Committee, by Art. 1, § 1 of its Rules,[3] has chosen the second of the foregoing alternatives authorized by § 12 of the Election Law. As a result each county committeeman has an equal vote instead of the weighted vote (based on the number of Republican constituents in his election district) which he would have if the county committee had chosen the first alternative and limited each election district to two committeemen. Because of the wide disparities in Republican voter strength among the various Kings County election districts, committeemen from districts with low Republican enrollment exercise a voting strength much greater than the proportionate strength of the Republican voters they represent.

It is this failure to accord voting weight in proportion to the voting strength of each committeeman's constit-

2. Election Law § 12 provides in pertinent part:
    "1. The county committee of each party shall be constituted by the election in each election district within such county of at least two members and of such additional members, not in excess of two, as the rules of the county committee of the party within the county or the statement filed pursuant to section eighteen may provide for such district, proportional to the party vote in the district for governor at the last preceding gubernatorial election, or in case the boundaries of such district have been changed or a new district has been created since the last preceding gubernatorial election, proportional to the party vote cast for members of assembly or in the event there was no election for member of assembly, then proportional to the party enrollment in such district at the last preceding general election. In a county in which no additional members are provided for by rules of the county committee or the statement filed pursuant to section eighteen, the voting power of each member shall be in proportion to such party vote. In a county in which additional members are so provided for, on the basis of the party vote in election districts, or from as-

sembly districts, each member shall have one vote. Each member of a county committee shall be an enrolled voter of the party residing in the assembly district from which or in the assembly district containing the election district in which such member is elected."

3. Article 1, § 1 of the Kings County Republican County Committee Rules provides:
    "The County Committee shall consist of two (2) members from each Election District in each Assembly District as provided by law, plus one additional member to be elected in each Election District for every two hundred (200) votes cast for the Republican candidate for Governor at the last preceding election or for every two hundred (200) Party votes cast for the Member of Assembly at the last preceding election or for every (200) enrolled members of the Party at the last preceding general election, whichever basis shall be applicable, pursuant to the provisions of Section 12 of the Election Law of the State of New York.
    "The members of the County Committee shall be elected biennially, in even numbered years, when members of the State Committee are elected."

uency that is attacked by plaintiffs as violative of the "one-man, one-vote" principle.[4] Plaintiffs contend that in all county committee matters they are entitled in effect to the equivalent of "one Republican, one vote." Judge Dooling agreed, finding that "no reason appears which can justify the arbitrary voting weight result that is produced in the Kings County Republican County Committee by reason of the rule provision for additional members and the consequent shearing away of the weighted voting requirement," and holding that Art. 1, § 1 of the Rules of the Kings County Republican County Committee and that portion of § 12 of the Election Law relied on in the promulgation of that rule are invalid and cannot be given effect.

▬ Before proceeding to the merits we must first consider the state's contention that since § 12 of the Election Law is statewide in its application Judge Dooling's declaration of unconstitutionality as applied could properly have been made only by a three-judge court pursuant to 28 U.S.C. § 2281, from which an appeal would lie directly to the Supreme Court rather than to ourselves. See Query v. United States, 316 U.S. 486, 490, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942). Convocation of a three-judge court pursuant to § 2281, however, is required only where an "injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute" is sought. Although the complaint here requested injunctive relief in addition to declaratory relief, the plaintiffs appear to have abandoned their prayer for an injunction before any proceedings had been begun, and thereafter to have sought only a declaratory judgment,[5] which would not require the convening of a three-judge court, Mitchell v. Donovan, 398 U.S. 427, 430–431, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), even though the complaint as originally drawn had sought injunctive relief, Rosario v. Rockefeller, 458 F.2d 649, 651–652 n. 2 (2d Cir. 1972).[6] Furthermore, we cannot

---

4. The "one-man, one-vote" problem growing out of § 12 of the Election Law may be the result of inadvertence on the part of the Legislature rather than design. Prior to 1953, the number of additional committee members allowed under the second alternative was not limited to two. Instead, election districts were allowed as many additional committeemen as their party enrollment entitled them. As long as the number of committeemen from each election district bore a relationship to the number of party members in each district, no Equal Protection problem arose from the limitation in § 12 that under the second alternative each committee member was to have one vote. In 1953, however, in an effort to limit the size of the county committees, § 12 was amended to permit a maximum of four committeemen from each election district under the second alternative procedure. Laws of 1953, c. 388. The "equal vote" clause was left unchanged.

5. Indeed, all parties agreed below that a three-judge court was not required, see Judge Dooling's opinion, p. 2, and "Conference Memorandum and Order" dated November 19, 1971, but for a reason that does not appear supportable, i. e., that § 12 of the Election Law concerns only a local rather than a statewide question, citing Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). However, the statutes challenged in *Moody* were of only local application, whereas here the second alternative of § 12 applies with equal force throughout the state. In addition, it is settled that a three-judge court is required when a state statute is alleged to be unconstitutional as applied to the plaintiffs rather than on its face. Query v. United States, 316 U.S. 486, 490, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942); Department of Employment v. United States, 385 U.S. 355, 357, 87 S. Ct. 464, 17 L.Ed.2d 414 (1966); Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S. Ct. 532, 24 L.Ed.2d 567 (1970).

6. In view of plaintiffs' decision not to seek injunctive relief, which Judge Dooling noted in his opinion, we find it unnecessary to decide whether plaintiffs have also failed to meet the "state officer" requirement of § 2281, which must be construed strictly. Phillips v. United States, 312

avoid noting that our own three-judge review, while not by a district court, does serve to satisfy the essential purpose of § 2281, which was to prevent a single district judge from paralyzing the enforcement of a statewide law. Since the principles governing the case are clear, to remand for the convening of a three-judge court at this stage would amount to a waste of judicial manpower. See Astro Cinema Corp. v. Mackell, 422 F.2d 293, 298 (2d Cir. 1970).

■■ Turning to plaintiffs' claim of denial of equal protection, the essential standard by which we are governed in determining whether the votes of county committeemen should be weighted in proportion to the number of Republican voters they represent is whether their function in voting is to select a nominee for public governmental office, as distinguished from conduct of the private affairs of their political organization. Although political parties are not immune from constitutional limitations merely because they are private groups, Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927); Nixon v. Condon, 286 U.S. 73, 83–85, 52 S.Ct. 484, 76 L. Ed. 984 (1932); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Smith v. Allwright, 321 U.S. 649, 663–665, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Terry v. Adams, 345 U.S. 461, 469, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Gray v. Sanders, 372 U.S.

368, 374, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), conversely they are not required to apply the one-man, one-vote principle to votes taken in the course of their internal affairs. Lynch v. Torquato, 343 F.2d 370, 372 (3d Cir. 1965). The state is obligated to insure that the votes of constituents will be given equal weight only when the voting, whether directly by them or indirectly through their committeemen, is pursuant to "the decision of the *government* to have citizens participate individually by ballot in the selection of certain people who carry out *governmental* functions," Hadley v. Junior College District, 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45 (1970) (emphasis added). "All procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgement of the right to vote," Moore v. Ogilvie, 394 U.S. 814, 818, 89 S.Ct. 1493, 1495–1496, 23 L.Ed.2d 1 (1969).

■ Applying these principles here, we hold that the Equal Protection Clause does not mandate the adoption by defendants of weighted voting in the performance of their major duty and function as committeemen, which is to conduct the internal management and business of the county committee. Whatever its reason for giving disproportionate weight to the vote of some committeemen in such matters—whether

U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Allen v. State Board of Elections, 393 U.S. 544, 561, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); Mitchell v. Donovan, *supra;* Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). It should be noted, for instance, that under existing decisions of this court, *e. g.,* Zuckerman v. Appellate Division, 421 F. 2d 625, 626 (2d Cir. 1970), and of other courts, *e. g.,* Feldman v. State Board of Law Examiners, 438 F.2d 699, 705, (8th Cir. 1971); the New York City Board of Elections would not be considered a "person" within the meaning of § 1983 and hence could not properly be served and joined as a "state officer" for purposes

of § 2281. However, the issue of whether such a body may be treated as a "person" in suits for injunctive relief has been accepted for review by the Supreme Court, see Carter v. Carlson, 447 F.2d 358, 368–369 (D.C.Cir.1971), cert. granted sub nom. District of Columbia v. Carter, 404 U.S. 1014, 92 S.Ct. 683, 30 L.Ed.2d 661 (1972). As for the individual members of the Kings County Republican County Committee, it is also doubtful whether they would qualify as "state officers," which is a narrower concept than "acting under state law," the criterion used in the Civil Rights Act, 42 U.S.C. § 1983. See Dahl v. Republican State Committee, 319 F. Supp. 682, 683–684 (W.D.Wash.1970); Smith v. State Executive Committee, 288 F.Supp. 371, 374 (N.D.Ga.1968).

it be to encourage them to build party strength in weaker districts or some other purpose—when the county committee acts as only a private voluntary association of citizens, it is no more bound by the constitutional duty to weight committee members' votes according to the number of constituents represented by them than is any other private club. We therefore decline to extend the Equal Protection requirement of the Fourteenth Amendment to votes taken by the county committee in the conduct of its internal party affairs which have no direct relation to the electoral process. See Lynch v. Torquato, 343 F.2d 370, 372 (3d Cir. 1965). In those rare instances where committeemen perform public electoral functions (e.g., the nomination of candidates to fill vacancies or to run in special elections, or the giving or consent to candidacies by non-members of the party), however, the county committee is required by the Equal Protection Clause to apply the "one-man, one-vote" principle, since in such cases it is unquestionably playing an integral part in the state scheme of public elections. See Maxey v. Washington State Democratic Committee, 319 F.Supp. 673, 679 (W.D.Wash.1970).

To the extent that § 12 of the Election Law and Art. 1, § 1 of the Kings County Republican County Committee authorize disproportionate voting by committeemen in their infrequent performance of public electoral functions, these provisions clearly transgress constitutional bounds. In Gray v. Sanders, *supra*, the Supreme Court struck down a Georgia statute which allocated greater weight in general and primary elections to voters in underpopulated counties of the state. The Court there held that "[o]nce the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote." 372 U.S. at 379, 83 S.Ct. at 808. The State of New York recognizes this obligation, as is evidenced by the provision for weighted

voting, based on the number of enrolled party members represented by the county committeeman, in the first alternative under § 12. The irrational procedure authorized by the second alternative of the statute, however, flies in the face of this requirement. Despite the fact that Kings County has over 1,200 election districts containing substantial disparities in Republican Party membership, the statute arbitrarily limits the number of additional committee members from each election district to two. Under the statute, therefore, the most heavily Republican-populated election district in the county can never have more than twice as many committee members as the least populous district. Yet each committee member is given a vote of equal weight within the county committee.

■■ The Court has recently reiterated that the rule of "one-man, one-vote" need not be applied with mathematical precision, but that any "deviations from population equality must be justified by legitimate state considerations." Abate v. Mundt, 403 U.S. 182, 185, 91 S.Ct. 1904, 1906, 29 L.Ed.2d 399 (1971); Swann v. Adams, 385 U.S 440, 444, 87 S.Ct. 569, 7 L.Ed.2d 501 (1967). There can be no doubt that the state has a legitimate interest in permitting political parties to choose an election procedure whereby more than the minimum two county committeemen may be elected from each election district. Allowing a greater number of the party faithful to achieve the status of county committeemen may foster undivided party loyalty and labor on behalf of many, thus strengthening both the party and the political system itself. Nor can there be any dissent from the view that there is a justifiable interest in restricting the number of county committeemen to manageable size. However, no such interest is served by the present requirement that equal rather than weighted voting be followed when the additional-committeemen alternative is selected.[7]

---

7. We do not consider it a justifiable excuse for refusing to weight votes that it avoids the necessity of complex mathematical calculations. This argument falls with the

It is "a crazy quilt without rational basis." Baker v. Carr, 369 U.S. 186, 254, 82 S.Ct. 691, 730, 7 L.Ed.2d 663 (1962) (Clark, J., concurring). Since deviations from the principle of "one-man, one-vote" can stand only where they "occur in recognizing certain factors that are free from any taint of arbitrariness," Roman v. Sincock, 377 U.S. 695, 710, 84 S.Ct. 1449, 1458, 12 L.Ed.2d 620 (1964), it follows that the second alternative allowed by § 12 of the Election Law, as implemented by Art. 1, § 1 of the Kings County Republican County Committee Rules, is invalid as applied to those rare instances where the committee performs a public electoral function.[8]

The order of the district judge is therefore affirmed insofar as it declares invalid the procedure by which votes taken in the Kings County Republican County Committee on matters "integral to the electoral process" are counted. To the extent that the district court's order applies to votes taken in the county committee on internal party matters

or on matters only indirectly relating to the selection of party nominees, we reverse.

Affirmed in part and reversed in part.

realization that the first alternative under § 12, with its weighted voting provision, is in effect in most of the county committees of the state. Furthermore, other sections of the Election Law mandate weighted voting, with no exceptions, in circumstances involving equally complex calculations. See, e. g., Election Law § 131(2) (b) (2).

8. Our decision is not inconsistent with the recent decisions of the Court of Appeals for the District of Columbia Circuit in State of Georgia v. National Democratic Party, 447 F.2d 1271 (D.C.Cir.), cert. denied, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971), and Bode v. National Democratic Party, 452 F.2d 1302 (D.C.Cir.1971), cert. denied, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972), rejecting Fourteenth Amendment challenges to the method of apportionment of delegates to the 1972 Democratic National Convention. In State of Georgia, the plaintiffs attempted to force the Democratic National Convention to base each state's delegate strength on that state's *total* population, a measure the court found inappropriate. Delegates to a party convention, said the court, represent

party members, not the total electorate. 447 F.2d at 1279. Here, the plaintiffs seek only to base county committee voting strength on the number of enrolled *Republicans* within each election district.

*Bode* essentially concerned the decision of the Democratic National Committee to apportion roughly half of the seats at the party convention on the basis of Democratic voting strength within each state, with the other half to be based on each state's relative strength within the Electoral College. Malapportionment results from the constitutional overrepresentation given to the less populous states in the Electoral College. In holding that the plan did not violate the Equal Protection Clause, the court relied on the fact that the purpose of the Democratic National Convention was to select a candidate whose success would be determined by the Electoral College rather than by the popular vote. Therefore, the court found that under the circumstances the slight variations from precise voter equality were rational. 452 F.2d at 1308. By contrast, the nominees selected by the county committee will be elected by a majority or a plurality of the popular vote.