**Ramsey CLARK and Chandra Carr,**
**Plaintiffs,**

**v.**

**Alex ROSE et al., Defendants.**

**No. 74 Civ. 2598 HRT.**

United States District Court,
S. D. New York.

July 29, 1974.

Lawrence W. Schilling, New York City, for plaintiffs.

Herzfeld & Rubin, P. C., by Herbert Rubin and Edward L. Birnbaum, New York City, for defendants Alex Rose, Donald Szantho Harrington, The Liberal Party, The State Executive Committee.

Trubin, Sillcocks, Edelman & Knapp by Ross Sandler, New York City, for defendant Jacob K. Javits.

Louis J. Lefkowitz, Atty. Gen. of N. Y., by Daniel M. Cohen, New York City, for defendants Arthur H. Schwartz, Remo J. Acito, William H. McKeon and Donald Rettaliata as members of the State Board of Elections.

Thomas J. Spargo, Albany, N. Y., for amicus curiae, Republican State Committee.

## OPINION

Before MANSFIELD, Circuit Judge, and TYLER and BRIEANT, District Judges.

TYLER, District Judge.

On July 11, 1974, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284, to consider the constitutionality of the Wilson-Pakula Law, New York Election Law § 137 (McKinney's Consol.Laws 1964, c. 17, 1973–74 Supp.) [1] (the "statute"), which provides that a person who is not a member of a political party may not receive that party's nomination or run in its primary unless that person receives the authorization of the majority of the party's State

---

1. § 137 Limitation of the right to designate or nominate party candidates

"1. No petition for the purpose of designating any person as a candidate for party nomination at a primary election shall be valid unless the person so designated shall be enrolled as a member of the party referred to in said designating petition at the time of the filing of the petition.

2. No nomination made by any committee of a political party shall be valid unless the person so nominated was enrolled as a member of such party at the time of the filing of the certificate of nomination, provided, however, that such restriction shall not apply to the nomination or designation of a candidate for statewide judicial office made by a state committee in the nomination procedure prescribed in section one hundred thirty-one.

3. No party designation or nomination made by a committee to fill vacancies, and no party nomination made for an office to be filled at a special or general election by reason of a vacancy existing in such office, shall be valid unless the person so designated or nominated shall be an enrolled member of the political party referred to in the certificate of substitution or of nomination at the time of the filing of such certificate.

4. Notwithstanding the provisions of subdivisions one, two and three of this section, at a meeting of the members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, or of such other committee as the rules of the party may provide, except as hereinafter in this subdivision provided with respect to certain offices in the city of New York, by a majority vote of those present at such meeting provided a quorum is present, such committee may authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party as provided in this section. In the event that such designation or nomination is for an office to be filled by all the voters of the city of New York, such authorization must be by a majority vote of those present at a joint meeting of the executive committees of each of the county committees of the party within the city of New York, provided a quorum is present at such meeting. The authorization to file the designating petition, the certificate of nomination and the certificate of substitution shall be filed not later than four days after the last day to file such designating petition, certificate of nomination or certificate of substitution. The certificate of authorization shall be signed and acknowledged by the presiding officer and the secretary of the meeting at which such authorization was given.

5. This section shall not be construed to apply to a political party designating or nominating candidates for the first time, nor to candidates for judicial offices."

Committee [2] or of such other group as the party rules may provide.

Plaintiffs in this action are Ramsey Clark, an enrolled Democrat who has unsuccessfully sought the 1974 nomination of the Liberal Party of the State of New York for United States Senator, and Chandra Carr, an enrolled member and "district leader" of the Liberal Party. Defendants are the Liberal Party; the State Executive Committee of that party; certain officers of the party; Jacob K. Javits, a member of the Republican Party and its candidate who has been designated, pursuant to § 131(2)(b) of the Election Law, as candidate of the Liberal Party for the office of United States Senator for the State of New York; and members of the State Board of Elections. Because of the alleged unconstitutionality of the state, plaintiffs have asked this court to enjoin the State Board of Elections from processing the designation of Javits as candidate of the Liberal Party.

On July 17, 1974, the statutory court heard argument from counsel. The court has also considered an affidavit submitted on behalf of several defendants and various letters, submitted by plaintiffs, which amount to an exchange of correspondence between plaintiff Clark, defendant Javits and defendant Donald Harrington, Chairman of the Liberal Party. For reasons hereinafter discussed, we conclude that plaintiffs' requested relief must be denied.

Plaintiffs have argued that the statute is unconstitutional because it denies to Clark equal protection of the law and because it interferes with Carr's right to vote. Before this court addresses itself to the merits, the issue of the standing of these plaintiffs to bring this action must be discussed.

What plaintiffs object to is the fact that under subdivision (4) of the statute, the State Executive Committee [3] is empowered to authorize the candidacy of one non-member candidate while denying other non-party members a place on the ballot in the primary election, if it so chooses. In theory, before Clark could be eligible for such authorization, however, he would have had to fulfill certain prerequisites. As plaintiffs have admitted in their complaint, there are three basic methods under New York law by which a candidate may secure a party's nomination or designation as a candidate at a primary election, including a federal office such as that of Senator. One method is by receiving the majority vote of the State Committee. N.Y. Election Law § 131(2)(b)(1) (McKinney Supp.1973–74). Another is by receiving twenty-five percent or more of the vote cast by the State Committee and then making the prescribed written demand to the Secretary of State for entry of one's name as a candidate. N.Y. Election Law § 131(2)(b)(3) (McKinney Supp.1973–74). The third is by securing a designating petition signed by "not less than twenty thousand or five per centum, whichever is less, of the then enrolled voters" of the particular party in question. N.Y. Election Law § 136(5) (McKinney Supp.1973–74). A candidate,who is a member of the party need do no more. A non-member candidate, however, as mentioned heretofore, must receive authorization from, in this case, the State Executive Committee. Such authorization must be filed no later than four days following filing of the designating petition. § 137(4).

As all parties concede, Clark unsuccessfully sought to receive the majority vote of the State Committee of the Liberal Party at its meeting on June 15, 1974. At that meeting, the Committee considered and voted on three nominations of non-party candidates for the office of Senator. Javits received 85.7%

---

2. In certain situations not here relevant, the authorization needed is not that of the State Committee but rather that of the political subdivision of the office for which the designation or nomination is sought.

3. It is not disputed that, pursuant to § 137(4), the State Executive Committee of the Liberal Party was properly authorized to permit the nomination or designation of a non-party member.

of the votes cast, Clark received 8.8% and another candidate, also an enrolled Democrat, received 3.4%. Since Clark received less than twenty-five percent of the votes cast, he was ineligible, under §§ 131(2)(b)(3) and 137(4) of the Election Law, to seek authorization to run in the Liberal Party primary on September 10, 1974, based on the results of the State Committee meeting.

Clark, moreover, has not attempted to secure the petitions required under § 136(5). Indeed, by July 15, 1974, it was too late to do so. See Ch. 9 § 149–a(4), N.Y. Session Laws 24 (McKinney March 10, 1974). Plaintiffs have argued that it would have been futile for Clark to have pursued this route since, even if he had secured the requisite number of petitions, the State Executive Committee would have refused to authorize his candidacy in the primary. They point out that at the June 15 meeting, a resolution was defeated which would have provided that any non-member candidate who could comply with the provisions of § 136(5) would automatically receive the required authorization to run in the Liberal Party primary. That denial of a blanket authorization, however, does not appear to have been aimed specifically at Clark. We, therefore, are left to speculate whether or not, had he thereafter obtained the number of signatures of Liberal Party members required to comply with § 136(5), his request for authorization would have been viewed more favorably by the State Executive Committee. For these reasons we have been troubled by the possibility that Clark lacks standing to urge that subdivision (4) of the statute is unconstitutional. See Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, at 1281, 39 L.Ed.2d 714 (1974). Similarly, we have considered that Carr also may lack standing to attack the authorization provision since Clark, for want of the twenty-five percentum vote, or a valid designating petition, was not qualified to receive authorization. *Storer*, 94 S.Ct. at 1282.

Nonetheless, we prefer not to rest our decision upon lack of standing of plaintiffs. As plaintiffs' counsel in effect has argued, it can be reasoned that the events of the meeting of the State Committee on June 15 effectively rendered futile any attempts by Clark or on his behalf to obtain the requisite designating petition signed by rank and file Liberal Party members. The defeat of the general resolution offered by Merrill, apparently one of Clark's supporters, and the disappointingly small vote for Clark at that meeting may have been a sufficient indication that the State Executive Committee, if later presented with a valid designating petition before July 15, would have denied authorization to Clark under the statute. With this assumption, we turn to the merits.

We conclude that plaintiffs' constitutional arguments, though possessing plausibility, must fail. Preliminarily, we assume that subdivision (4) places some "burden" on the electoral process because it delegates to the political parties the power to discriminate as between non-member candidates, granting authorization to one and denying it to others. From this undeniable proposition, it can be said further that the subdivision potentially limits the number of candidates on the primary ballot and the freedom of choice at least theoretically available to party members in this state. Recognizing all of this, the difficulty with plaintiffs' argument is that it requires that once one non-member candidate has been authorized to appear on the Liberal Party line in the primary, an infinite number should be allowed to do so, at least where they satisfy the designating petition requirements of § 136 of the Election Law.

The Supreme Court has held that a state such as New York has a "legitimate interest in regulating the number of candidates on the ballot," Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972), and "in avoiding confusion, deception, and even frustration of the democratic process . . . ." that can result from an excessive number of non-party candidates. See Jenness v. Fortson, 403 U.S. 431, 442,

91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). The Liberal Party and the State of New York have a vital interest in regulating the qualification of candidates for office, including federal office. *Storer,* 94 S.Ct. at 1280; *Jenness, supra,* at 442, 91 S.Ct. 1970; Art. I, § 4 cl. 1 of the Constitution.

■ Subdivision (4), in our view, is a discreet mechanism designed to satisfy a compelling state interest, the avoidance of voter confusion and possible weakening and even usurpation of party organization. See *Storer,* 94 S.Ct. at 1279; Rosario v. Rockefeller, 410 U.S. 752, 761–762, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). As the New York courts have recognized, subdivision (4) was designed "to protect the integrity of political parties and to prevent the invasion into or the capture of control of political parties by persons not in sympathy with the principles of such political parties." [4] Werbel v. Gernstein, 191 Misc. 275, 78 N.Y.S.2d 440 (Sup.Ct.Kings Co.), aff'd., 273 App.Div. 917, 78 N.Y.S.2d 926 (2d Dept. 1948).

The State Committee of the Liberal Party is elected pursuant to §§ 13 and 136 of the New York Election Law on a basis designed to insure that it accurately reflects the views of the Liberal Party members. Such a Committee, which has the responsibility of party leadership, may be trusted to determine which non-member candidate can properly advance the political philosophy of the party members. It is true that, according to the Rules of the Liberal Party, the State Executive Committee has been empowered to authorize the candidacy of non-party members. Further, we assume, at least *arguendo,* that the authorization of a non-party candidacy is not a private internal party matter but rather a public electoral function. Seergy v. Kings County Republican County Committee, 459 F.2d 308, 314 (2d Cir. 1972). Nevertheless, under the statute, the State Committee as a whole also has the power to authorize the candidacy of a non-party member. Given the conceded events of the meeting of June 15, there has been no showing here that the statute by its terms has worked a denial of the one-man, one vote principle. Pursuant to § 131(2), members of the State Committee vote on a weighted vote basis in the nomination of candidates for state office; indeed, the vote heretofore described on June 15 proceeded on that basis. We must presume, therefore, that the Committee's vote of authorization would have proceeded on the same basis had Clark presented prior to July 15 a valid designating petition.

Even were the Liberal Party, by its delegation of its powers of authorization to the State Executive Committee, acting unconstitutionally, a point we need not reach, this assumption would not necessitate invalidation of the statute. Nor would it require the invalidation of the nomination of Javits as candidate for Senator. As has been readily admitted, Javits had the backing of the great majority of the State Committee. Moreover, as noted, in fact no action adverse to Clark has been taken by the Executive Committee of the Liberal Party.

■ If to open the Liberal Party to one non-member candidate were to open it to five, ten or twenty non-member candidates, voter confusion at a primary election would be a real possibility. The effect could be not only confusion but deception as contemplated by the Supreme Court in *Jenness, supra,* and *Bullock, supra.* Another party in New York, for example, might encourage or induce one or more of its members to seek authorization to appear on the Liberal Party primary ballot in order to undercut the chances of the candidate thought

---

4. Legislative history, in the usual, formal sense, of the statute is somewhat sparse. Nonetheless, the "Governor's Bill Jacket" relating to the statute is available at the New York Public Library. Its contents indicate that the members of the Senate and Assembly were concerned by the virtually complete take-over of the old American Labor Party, at least in one congressional district in New York City, by the late Vito Marcantonio, who at the time (1946-7) was an enrolled member of the Republican Party.

by the bulk of the Liberal Party members to best reflect their Party's philosophy and views. Conversely, to forbid all non-member candidates from running on, for example, the Liberal Party line would foreclose fusion tickets. New York, by enacting the statute, therefore, has reasonably sought to allow fusion tickets where desired without subjecting its political parties and their members to the debilitating effects of voter confusion and usurpation of the party organizations. We believe that the statute, therefore, meets a constitutionally legitimate state purpose within the electoral process.

It may not be irrelevant to note that the statute works a minimal impairment upon the franchise rights of both plaintiffs. Clark, an enrolled Democrat, has the right to contest for the nomination in the primary of his party; indeed, he conceded at the hearing that he is doing so. Further, the Election Law permits him, as a statewide candidate, to appear on the ballot as the candidate of an independent group. New York Election Law, § 138 (McKinney Supp.1973–74). Still further, he could change his party enrollment to the Liberal Party, New York Election Law, § 386 (McKinney 1964), and file designating petitions to oppose defendant Javits, in the primary with no need to seek authorization. It should also be noted that pursuant to § 148 of the Election Law, a non-party member who has the support of twenty thousand or five percentum, whichever is less, of the enrolled voters of the party can secure permission to have the members write in his name at a primary election. This can be done without the authorization of the State Committee or the State Executive Committee. In short, the statute does not deny Clark access to the voters; it merely sets forth certain preconditions to his becoming the candidate of a party in which he is not an enrolled member. Correspondingly, Carr suffers minimal restraints upon her voting opportunities and rights, which are more than offset by the compelling state interest to which we have referred. Furthermore, we note that, pursuant to § 148, Carr may seek opportunity to ballot for Clark as a write-in candidate in the Liberal Party primary or, pursuant to § 138, sign a designating petition for Clark as candidate of an independent group.

At least upon the facts presented by plaintiffs in this case, therefore, the statute works neither a denial of equal protection of the laws nor a denigration of the right to vote as protected by the First and Fourteenth Amendments. Plaintiffs' claim that the statute is unconstitutional is dismissed, and this court declines to restrain the State Board of Elections from processing the designation of defendant Javits by the Liberal Party.

It is so ordered.