**Robert MRAZEK et al., Plaintiffs,**

v.

**SUFFOLK COUNTY BOARD OF ELECTIONS et al., Defendants.**

**No. 78–C–2191 (JBW).**

United States District Court, E. D. New York.

June 7, 1979.

E. Thomas Boyle, Smithtown, N. Y., for plaintiffs.

Donald W. Leo, Coram, N. Y., for defendant Conservative Party of Suffolk County.

Leonard D. Wexler, Smithtown, N. Y., for defendants Lack and Wertz.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant Attorney General, A. Seth Greenwald, Asst. Atty. Gen., New York City, of counsel.

Howard E. Pachman, County Atty. of Suffolk County, Hauppauge, N. Y., for defendant Suffolk County Board of Elections.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiffs challenge the constitutionality of the Suffolk County Conservative party's method for designating Senate and Assembly candidates who are not enrolled party members. They have not demonstrated any factual or legal basis for their motion for summary judgment.

## I. FACTS

Shortly before the November, 1978 general election, plaintiffs—the Democratic party candidates for State Senator from the Second Senatorial District and for State Assemblyman from the Fourth Assembly District and two enrolled members of the Conservative party residing in those districts—sought relief removing the Conservative party designation of their opponents, Lack and Wertz, enrolled Republicans and Republican party candidates. Preliminary relief was denied, primarily on the ground that, given the immediate pendency of the general election, court intervention would irreparably disrupt the nearly completed campaign, thus interfering seriously with the right to vote of citizens in these districts. While the election is over, it is likely that the issue will arise again.

■ In order for a non-party member to be eligible to run as a party candidate, he or she must be authorized by a committee of the party. The statute permits party rules to control the nature of the committee empowered to grant this privilege:

> The members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, *or of such other committee as the rules of the party may provide,* . . . may, by a majority vote of those present at such meeting provided a quorum is present, *authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party* as provided in this section. . . .

N.Y. Election Law § 6–120(3) (emphasis added). *See also id.* § 6–120(1), (2).

Under Suffolk County Conservative party rules, the county executive committee is authorized to designate a non-party member as an eligible candidate in all elections except town elections. Rules and Regulations of the Suffolk County Conservative Party, Art. V, § 2(a) (April 25, 1976). The executive committee has thirteen members. Four are officers of the county committee; they are elected by the county committee, whose members in turn are elected by party members in each election district in the county. The other nine members each represent towns in the county; the member representing each town is selected by the county committeepersons who have been elected in each election district within the town. *Id.*, Art. II, § 2; Art. III, § 3(a). In the non-party member candidate designation process, each executive committee member apparently casts one vote. *Id.*, Art. III, § 3(a).

Once a non-party member is designated by the executive committee as an eligible party candidate, he or she must circulate designating petitions within the district from which election is sought and secure the required number of signatures of party members within that district. *See* N.Y. Election Law §§ 6–118; 6–136.

Plaintiffs argue that the principle of "one person, one vote" requires that where the party declares a non-party member eligible to run under the party banner, that decision must be made only by a body whose members have been elected by party members within the district from which the candidate will seek election. Where, for example, a non-party member seeks to become eligible to run as a party candidate for the New York State Assembly, the party committee which performs the initial designation must, they urge, be composed only of persons selected to represent party members within the particular assembly district. The present scheme, they assert, cannot meet this requirement. First, the four at-large members of the executive committee are chosen by the whole county committee, whose members are elected to represent party members in each election district of the county. Second, the nine other members of the executive committee are chosen to represent party members in each of various towns of the county. Towns may fall in the same or different senatorial and assembly districts. Suffolk encompasses ten assembly districts and four senatorial districts. *See* N.Y. State Law §§ 121, 124. At the time of the eligibility designation complained of, the executive committee apparently had only two members (from Smith-

town and Huntington) elected in a fashion plaintiffs construe as representing party members within the Second Senatorial District, and only one member (from Smithtown) so representing party members within the Fourth Assembly District.

## II. LAW

An "individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted . . . ." *Reynolds v. Sims,* 377 U.S. 533, 568–69, 84 S.Ct. 1362, 1385, 12 L.Ed.2d 506 (1964). But "mathematical nicety is not a constitutional requisite. . ." *Id.* Reasonable tolerances are particularly appropriate in measuring the smallest cogs of political machinery against the constitutional standard.

■ The law protects against any substantial diminution of each voter's practical power to participate in the selection of representatives. It does not require a formal equality that destroys the real power of the people. Particularly where party machinery is involved, the states and parties must be afforded broad leeway to devise the varied procedures needed to meet the special problems in our diverse and heterogeneous society. *See Marchioro v. Chaney,* —— U.S. ——, —— n.11, 99 S.Ct. 2243, 2246 n.11, 60 L.Ed.2d 816 (1979).

■ Because the process by which candidates secure a place on the ballot is "unquestionably . . . an integral part in the state scheme of public elections," it must comport with the one person, one vote principle. *Seergy v. Kings County Republican County Committee,* 459 F.2d 308, 314 (2d Cir. 1972). As the *Seergy* court put it:

In those rare instances where [county] committeemen perform public electoral functions (e. g., . . . *the giving [of] consent to candidacies by non-members of the party* ), . . . the county committee is required . . . to apply the "one man one vote" principle.

*Id.* at 314 (emphasis added).

The method at issue here has been sustained by the New York Court of Appeals.

*See, e.g., Anderson v. Meisser I,* 22 N.Y.2d 316, 292 N.Y.S.2d 654, 239 N.E.2d 531 (1968); *Miller v. Meisser,* 22 N.Y.2d 318, 292 N.Y.S.2d 656, 239 N.E.2d 532 (1968). And in *Anderson v. Meisser II,* 285 F.Supp. 974 (E.D.N.Y.1968), this court upheld against constitutional attack a similar eligibility designation scheme.

## III. APPLICATION OF LAW TO FACTS

■ There is no persuasive reason to depart from the precedents upholding the Conservative party designation process. First, plaintiffs have not provided a factual basis for a finding that the reduction of voter equality is anything more than the subtle but legal attenuation found in *Anderson II.* There is no indication, for example, of the numbers of Conservative party members within the relevant election districts, towns, or the county as a whole. Nor have the parties shown whether the four at-large committee members are county committeepersons and, if so, the strength of the party membership in the districts from which they were elected. This court cannot conclude from the evidence before it that in this or other eligibility designations pursuant to the existing procedure, the party membership within the relevant senatorial or assembly districts would not be represented.

Second, it may well be that any diminution in party member power within a given senatorial or assembly district is compensated for by the added power such members gain in participating, through their town representatives and through the at-large executive committee members chosen by the county committee as a whole, in eligibility designation decisions with regard to other senatorial and assembly districts. Judicial notice is taken of the fact that, historically in New York, parties other than the Democratic and Republican have traditionally drawn great strength—and been able to exercise considerable influence—by virtue of their ability to cross-endorse major party candidates. Requiring such endorsements to rest on an eligibility determination

process carried out only by those few representing party members within a given senatorial or assembly district might well result in marked diminution of party strength and influence, to the detriment of each party member. A technically more equal division of power might so diminish the total power of the party in its parasitic role as to reduce the value of each member's vote to the vanishing point. The Constitution is concerned with real, not merely theoretical, voting power. *But cf. Montano v. Lefkowitz*, 575 F.2d 378, 386–87 n.15 (2d Cir. 1978).

Third, the Suffolk County branch of the Conservative party as an aggregate unit—and not merely the party members within a given district—has a strong and legally cognizable interest in assuring that any candidate running under the party banner represents the policies of the party. *Cf. Ripon Society v. National Republican Party*, 173 U.S.App.D.C. 350, 368, 525 F.2d 567, 585 (1975) (en banc), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976) (interest of a party in the choice of its candidates). Were very small numbers of a minor party able to break party discipline with no supervision, the party might soon fall into disarray. In the case of major parties there are usually sufficient numbers of voters in senatorial or assembly districts to prevent idiosyncratic departures from policy. Minor parties, by contrast, are likely to have only a relatively few members in any one district, and thus less of the stability that often comes from numbers of people with diverse interests.

Fourth, the eligibility designation process at issue here does provide assurance that any non-party member seeking to run as a party candidate enjoys a significant amount of local party member support. Such candidates, like others, are required to obtain nominating petition signatures of a significant number of party members within the senatorial or assembly district from which they seek election. If party members within the district do not support the non-party member candidate, they need not sign. Members within the district are able, to circulate petitions on behalf of a party member candidate without the consent of the county committee or executive committee and secure a place on the primary ballot for their candidate.

Fifth, the executive committee meets with some regularity and has an institutional capacity to consider such problems as cross-endorsements. An ad hoc group representing only a district would be difficult to organize and call together to make the swift decisions needed in a developing election.

To overcome the argument of policy and the needs of a practical working party system in a democracy, plaintiffs rely on *Montano v. Lefkowitz*, 575 F.2d 378 (2d Cir. 1978). *Montano* involved a vacancy in a federal Congressional seat that was to be filled by a special election; time exigencies provided no opportunity for a party primary election. New York law permitted each political party to designate a candidate to fill the vacancy in accordance with party rules. N.Y. Election Law § 6–114. Each of the parties had delegated this power to the executive committee of the party committee for the counties in which the Congressional district was located. The Second Circuit held that this procedure violated the principle of, as Judge Friendly termed it, "one Democrat (or Liberal, etc.) one vote." *Id.* at 380.

But the election process at issue in *Montano* differed markedly from that at issue here. First, as Judge Friendly was careful to point out, *Montano* involved federal Congressional elections; it relied heavily on constitutional provisions respecting the election of members of Congress, and congressional action pursuant to those provisions. *Montano v. Lefkowitz*, 575 F.2d 378, 384–85 (2d Cir. 1978). Second, the opinion specifically eschewed any intention of passing on the one person, one vote issue as raised by a similar procedure with regard to state legislative elections. *Id.* at 387 n.17. Third, the election at issue in *Montano* was a special election; for all intents and purposes, the executive committee candidate designation was "final" in two respects not present here: the designated candidate was

**416**

apparently *not* required to file designating petitions reflecting support of party members; and because there was no primary election, party members had no opportunity to oppose—as by circulating designating petitions for another candidate—the choice of the party committee. *Montano* is not controlling.

The policy factors mentioned above, the *Anderson I* and *II* decisions laying down the thus far unchallenged law of this district, and the lack of any factual showing of prejudice by plaintiffs dictate the conclusion that their motion for summary judgment must be denied.

So ordered.