630 F.2d 890
 Robert MRAZEK, Rudolph F. X. Migliore, Leslie Fitzpatrick
and Grace Holzmacher, Plaintiffs-Appellants,
v.
SUFFOLK COUNTY BOARD OF ELECTIONS, the Conservative Party of
Suffolk County, Louis J. Lefkowitz, Attorney General of the
State of New York, James J. Lack,as a candidate of the
Conservative Party for Member of State Senate,
2dSenatorialDistrict, County of Suffolk, State of New York,
and Robert C. Wertz, as acandidate of the Conservative Party
for Member of Assembly, Fourth AssemblyDistrict, County of
Suffolk, State of New York, Defendants-Appellees.
 No. 614, Docket 79-7642.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 10, 1980.
Decided July 25, 1980.
 
 E. Thomas Boyle, P. C., Smithtown, N. Y., for appellants.
 Marian B. Scheuer, Asst. Atty. Gen. of N. Y., New York City (Robert Abrams, Atty. Gen. of N. Y., George D. Zuckerman, Asst. Sol. Gen. of N. Y., New York City, of counsel), for appellee Attorney General of State of New York.
 Donald W. Leo, Coram, N. Y., for appellee The Conservative Party of Suffolk County.
 Leonard D. Wexler, Smithtown, N. Y., for appellees Lack and Wertz.
 Before LUMBARD, MOORE and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Appellants herein seek favorable resolution of an issue left undecided in Montano v. Lefkowitz, 575 F.2d 378 (2d Cir. 1978), and determined adversely to them by the court below: that is, whether the "one-person, one-vote" principle is violated when members of a political party residing outside a particular political district are permitted under state law and party charter to participate in the nomination of non-party candidates seeking to represent that district in the state legislature. Such participation, in appellants' view, violates the equal protection and due process clauses of the Constitution in that it dilutes the autonomy and voting power of party members domiciled within the district whose representation in the state legislature may be affected by this nominating procedure. Following submission of the case upon the pleadings and stipulated facts, the district court confronted this issue on a broad constitutional plane, and in a thoughtful and potentially far-reaching opinion, dismissed the complaint. Mrazek v. Suffolk County Board of Elections, 471 F.Supp. 412 (E.D.N.Y.1979). We take a more modest view of the controversy presented by the facts of this case. Although our route is therefore less exhilarating than that of the court below, we arrive at the same destination and accordingly affirm its judgment.
 
 I.
 BACKGROUND
 
 2
 Appellees James J. Lack and Robert C. Wertz are members of the Republican Party who in 1978 ran successfully for the offices of State Senator for the Second Senatorial District and Assemblyman for the Fourth Assembly District, respectively.[1] In addition to carrying the banner of their own party, Lack and Wertz had also been nominated as the candidates of the Conservative Party in accordance with state law and party charter. Appellants Robert Mrazek and Rudolph F. X. Migliore are registered members of the Democratic Party who opposed Lack and Wertz in the 1978 general election, and appellants Leslie Fitzpatrick and Grace Holzmacher are enrolled members of the Conservative Party who, at the relevant time, resided within the Second Senatorial and Fourth Assembly Districts. No claim is made that Mrazek or Migliore sought the endorsement of the Conservative Party, or that Fitzpatrick or Holzmacher endeavored to obtain the nominations for themselves, for other party members or for persons unaffiliated with the Conservative Party.
 
 
 3
 Although the election is long since over and the matter plainly moot as to Lack and Wertz, Clark v. Rose, 531 F.2d 56, 57 (2d Cir. 1976), appellants seek prospective relief in the nature of a declaration of the invalidity of the manner in which Conservative Party endorsements for intra-county state political offices are conferred upon persons not formally affiliated with the party. New York's "Wilson-Pakula" law, now codified as New York Election Law § 6-120(3) (McKinney 1978),[2] requires that a candidate soliciting the endorsement of a political party with which he is not affiliated obtain the approval of the appropriate party committee before filing a petition with the county board of elections designating him as that party organization's endorsed candidate. Article IX, Section 6(a) of the Rules and Regulations of the Conservative Party of New York State (1974) permits endorsements of non-party candidacies for intra-county political offices to be made in conformity with procedures set forth by the party's appropriate county committee. See Restivo v. Conservative Party of the State of New York, 391 F.Supp. 813, 816 n.2 (S.D.N.Y.1975). Under Article V, Section 2(a) of the Rules and Regulations of the Suffolk County Committee of the Conservative Party of New York State (1976), the power to authorize non-party candidacies is effectively delegated to an Executive Committee, which unlike its parent body, meets with some regularity.
 
 
 4
 The Executive Committee is composed of thirteen members. Four are the officers of the County Committee, elected to those positions by the members of that body, who in turn are elected by party members in each of the election districts in the county.[3] These four may thus be said to represent a county-wide constituency. Each of the remaining nine members of the Executive Committee represents one of the ten towns into which Suffolk County is subdivided.[4] Town representatives to the Executive Committee are selected by the county committeepersons who have been elected in the various election districts encompassed by the township.
 
 
 5
 There are four senatorial and ten assembly districts within Suffolk County. The Second Senatorial District embraces some or all of two towns, Smithtown and Huntington, and the Fourth Assembly District lies within Smithtown. Both political units are situated in the western urban portion of the county. From the record before this Court it appears that the five western towns contain significantly greater numbers of Conservative Party members than the five towns located in the eastern, rural reaches of the county.[5] Notwithstanding this potential malapportionment of representation on the Executive Committee, an issue which is not raised by appellants, the votes of all members of the Executive Committee are counted equally for purposes of making non-party endorsements.
 
 
 6
 In order for an unaffiliated individual to obtain authorization for a Conservative Party candidacy for office within Suffolk County, that person must procure the backing of the majority of Executive Committee members present and eligible to vote at the meeting called to consider such matters. This accomplished, the candidate receives a certificate of authorization to file a petition with the County Board of Elections designating him as the party's endorsed nominee. As set forth under New York Election Law §§ 6-136(2)(h) and (i) (McKinney 1978), the petition must contain the requisite number of signatures of party members registered to vote within the district where the unaffiliated candidate will seek office: for State Senate, the number is the lesser of one thousand signatures or five percent of the party's local enrollment, and for State Assembly, the lesser of five hundred or five percent of the Conservatives registered to vote in the district.[6]
 
 
 7
 No procedure appears to exist whereby a disappointed non-party candidate for the Conservative endorsement can either dispute or appeal from an Executive Committee decision awarding the party's support to a rival or compel the party to withhold any endorsement. Neither is there a mechanism whereby an unaffiliated individual may compel a primary between himself and a candidate duly endorsed by the Conservative Party organization. In sum and substance, no non-party member may secure the Conservative Party endorsement except through the Executive Committee.[7] An enrolled party member, however, may contest the Executive Committee's non-party endorsement by filing a designating petition containing the same minimum number of signatures applicable to the non-member, thereby forcing a primary. It might further be noted that in the event a primary is compelled, an unaffiliated candidate may, under certain conditions, secure the opportunity for party members to write in his name and may, of course, run as an independent in the general election. See Clark v. Rose, 379 F.Supp. 73, 78 (S.D.N.Y.1974) (three judge court). As indicated above, Lack and Wertz were unopposed for the Conservative Party nominations.
 
 II.
 THE PROCEEDINGS BELOW
 
 8
 In July, 1978, after Lack and Wertz had obtained the authorization of the Executive Committee and had duly filed their designating petitions with the County Board of Elections, Mrazek and Migliore instituted an action in State Supreme Court pursuant to New York Election Law § 16-102, seeking to block their nominations. From the record before us the precise basis for the state court suit is unclear, but it appears that without reaching the merits of the complaint the court dismissed the action on the ground that neither Mrazek nor Migliore possessed standing to vindicate rights belonging to members of the Conservative Party. The decision was affirmed without opinion by the Appellate Division and the Court of Appeals declined to entertain the case.
 
 
 9
 After Fitzpatrick and Holzmacher were added as plaintiffs, the present proceedings were instituted in the federal district court for the Eastern District of New York in October, 1978. Plaintiffs asserted that the "one-person, one-vote" principle, inherent in the Fourteenth Amendment to the United States Constitution was contravened by the Conservative Party's nomination procedure in that the candidacies of non-party members for intra-county state political offices had been authorized with the participation of Executive Committee members representing constituencies entirely unrelated to the Second Senatorial or Fourth Assembly Districts. As such, it was asserted that defendants had violated 42 U.S.C. § 1983.
 
 
 10
 The complaint alleged, and properly so in light of Seergy v. Kings County Republican County Committee, 459 F.2d 308, 314 (2d Cir. 1972), that the cross-endorsement of a non-party member was a public, electoral function, not an internal, administrative matter and consequently must be conducted in a manner comporting with constitutional guarantees.[8] Unlike the issue posed in Seergy, however, appellants herein did not, and on this appeal do not, challenge the composition of the Executive Committee on the ground that the votes of party members in the more populous, western sector of the county were not proportionately represented, nor was it asserted that given this regional imbalance some form of weighted vote was required. This action is not an apportionment case, see, e. g., Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964),[9] and appellants do not seek to dissolve the Executive Committee and reconstitute it in accordance with actual party strength in each town, or otherwise to effect any change in the procedures governing that body's public, electoral functions. Rather, conforming their claim to our holding in Montano v. Lefkowitz, supra, appellants challenge the cross-endorsement mechanism solely upon the theory that any extra-district participation in the procedure, whether or not such input is in relative proportion to the number of Conservatives in the county as a whole, violates the constitutional rights of party members residing within the affected district. The nub of the complaint is set forth at paragraph 20 thereof:
 
 
 11
 The designation of JAMES J. LACK and ROBERT C. WERTZ violated the principle of "one-man, one-vote" encompassed by the due process clause and equal protection clause of the Federal constitution because persons outside the political sub-unit determined the unit's candidate under Election Law 6-120(3). Such procedure is authorized by Election Law § 6-120(3), and therefore such statute as applied here is unconstitutional.
 
 
 12
 In consequence of this alleged impropriety, plaintiffs below sought to enjoin the Suffolk County Board of Elections from validating the designations of Lack and Wertz and to obtain an order striking their names from the Conservative Party line at the general election. Furthermore they prayed for a declaration that the relevant state law was unconstitutional inasmuch as it countenanced party rules permitting the abridgement of the voting rights of its members.
 
 
 13
 Judge Weinstein denied preliminary injunctive relief without opinion, seemingly for the reason that the imminence of the election precluded eleventh-hour judicial interference. No appeal was taken from that decision, and after Lack and Wertz had prevailed at the polls, the matter was submitted for plenary adjudication upon the pleadings and stipulated facts.
 
 
 14
 Ruling that the issue presented had not been mooted by the election,[10] the district court rejected plaintiffs' claim and dismissed the complaint pursuant to a memorandum opinion dated June 7, 1979. Judge Weinstein stated at the outset that plaintiffs had failed to adduce a sufficient factual foundation for their assertion, and that the dilution of voting power of which they complained was not conclusively shown to be "anything more than the subtle but legal attenuation" permissible under the Fourteenth Amendment, Mrazek v. Suffolk County Board of Elections, supra, 471 F.Supp. at 414.[11] The court ruled further, however, that even if the data established that substantial power had been exercised by committeepersons representing Conservatives residing outside the affected districts, and assuming further that this participation constituted a diminishment of the voting rights of local party members, the procedure was nevertheless constitutionally valid in view of strong countervailing state interests and policy considerations. The court cited the enhanced need on the part of fringe parties for strong centralized leadership and for consistent adherence to the party's platforms, both of which legitimate objectives could be subverted if small numbers of party members in individual districts had the ability to cause "idiosyncratic departures from policy," Mrazek, supra, 471 F.Supp. at 415. Additionally, the court recognized that the opportunity for disaffected loyalists to mount a primary, together with the petition requirement, sufficiently ensured the party faithful against irresponsible conferral of the Conservative Party nomination upon a non-member by the Executive Committee, or the imposition of unacceptable non-party candidates upon local party members by a remote organization. Judge Weinstein further noted that the perceived diminishment of voting power within the district was offset by the right of district residents to participate in the selection of non-party candidates for offices in neighboring districts. Montano v. Lefkowitz, supra , was distinguished as turning not upon Fourteenth Amendment considerations, but upon provisions in Article I, Section 2 of the Constitution pertaining to the election of Congressmen, and as involving a special election pursuant to which there was no opportunity to compel a primary or otherwise to contest the committee's endorsement. Judgment was entered dismissing the complaint and this appeal followed.
 
 III.
 DISCUSSION
 
 15
 Appellants now urge essentially the same arguments rejected by Judge Weinstein. Eager for clear judicial approval of their cross-endorsement procedure, appellees have withdrawn the procedural defenses which had been advanced by them in the state courts and below and urge adoption of the holding of the district court. We conclude, for the reason set forth below, that the complaint fails to state a viable cause of action, and it is therefore unnecessary to address the constitutional issue as framed by appellants and as resolved by Judge Weinstein.
 
 
 16
 Appellants allege, in essence, that their voting rights are violated by the participation of non-resident party members in the selection of candidates for political office in their district. Such interference, in their view, contravenes the one-person, one-vote doctrine. We disagree. The fact that state law and party charter contemplate a procedure impinging upon the autonomy of local subdivisions to select non-party candidates may, in the view of some political scientists or social theorists, be regrettable, but such a mechanism is not violative of the guarantee of one-person, one-vote.
 
 
 17
 This is simply because however diluted the votes of local party members may be by outsider intervention into non-party nominations for their state representatives, their own votes, within the affected districts, remain entirely equal. The one-person, one-vote doctrine requires no more, and does not create rights and privileges beyond this warranty of mathematical equivalency of votes. We reiterate that appellants' theory does not invite us to assay the comparative representation of different towns on the Executive Committee, and the complaint does not assail the legitimacy of that body as it is presently constituted. Consequently, we need not compare the weight accorded the ballots of district residents with those of non-district residents: assuming the applicability of a one-party member, one-vote standard to party nominating procedures, appellants do not charge nor have they presented sufficient evidence to establish, that the representation on the Executive Committee was malapportioned. The claim at bar is simply that the equal protection clause is violated by any substantial input which non-resident party members may have in the endorsement of non-party candidates for state office in other political districts. This misconceives the one-person, one-vote principle: that doctrine assures voter equality, not local autonomy or a particular allocation of political power. In short, appellants have invoked a constitutional principle which is inapposite to the evil of which they complain.
 
 
 18
 Montano v. Lefkowitz, supra, is not to the contrary. There, we condemned a party procedure, comparable to that in issue here, allowing for county-wide participation in the selection of the Democratic nominee for a special election for Representative from a congressional district encompassed within the county. Our disapprobation of the procedure was not based on equal protection considerations, but was due to concerns over provisions in Article I of the Constitution which, in light of subsequent statutes, was held to require that each congressional district autonomously select and elect its own Representative. Indeed, it was expressly noted that "our decision rests in considerable part on the provisions of the Constitution with respect to the election of Representatives and action by Congress pursuant to them." Id., 575 F.2d at 387 n.17.
 
 
 19
 Those federal concerns are not implicated in the instant proceeding. It is belatedly suggested in appellants' brief that because the New York State Constitution contains an analogous provision regarding the composition of the state legislature, the evil here is equivalent and similar relief warranted. This argument suffers from two fatal defects. First, a review of the complaint reveals that it is premised solely upon the alleged violation of the United States Constitution. The pleading does not cite the state Constitution as a basis for the relief sought, nor is it averred that the district court, in the event it rejects the federal claim, should exercise pendent jurisdiction over an implied state cause of action. Consequently, our authority to hear this matter is premised exclusively on the alleged contravention of 42 U.S.C. § 1983, which secures persons against the deprivation, under color of state law, of their rights and privileges created under the Constitution or laws of the United States. Appellants have demonstrated no violation of federal rights and, under the circumstances of this case, we are without jurisdiction to consider a claim bottomed upon state guarantees. Maine v. Thiboutot, --- U.S. ----, 100 S.Ct. 2502, 65 L.Ed.2d ---- (1980); see also Snowden v. Hughes, 321 U.S. 1, 6-7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944); Association For The Preservation of Freedom of Choice v. Simon, Inc., 299 F.2d 212, 214 (2d Cir. 1962).
 
 
 20
 Second, assuming that we could properly exercise pendent jurisdiction over a claim under the New York Constitution, we would be compelled to reject appellants' challenge on authority of the New York Court of Appeals' prior approval of the procedure whereby non-party endorsements may be delegated to appropriate county committees which may encompass many smaller political subdivisions. Anderson v. Meisser, 22 N.Y.2d 316, 292 N.Y.S.2d 654, 239 N.E.2d 531 (1968); Miller v. Meisser, 22 N.Y.2d 318, 292 N.Y.S.2d 656, 239 N.E.2d 532 (1968). The imprimatur of the state's highest court upon the procedure in question forecloses us from condemning the practice as violative of state law. We might also note in this regard that several federal courts in this Circuit have also approved the procedure, though not as against the particular objection raised in this action. See Restivo v. Conservative Party of the State of New York, supra, 391 F.Supp. 813; Clark v. Rose, supra, 379 F.Supp. 73; Anderson v. Meisser, 285 F.Supp. 974 (E.D.N.Y.1968).
 
 
 21
 Appellants' challenge must, for the reasons set forth above, be rejected. Needless to add, we do not pass upon the issue of whether the Executive Committee representation allotted to Conservative Party members such as Fitzpatrick or Holzmacher was in accordance with the mathematical requirements of the one-person, one-vote principle. It is also unnecessary to decide a number of intriguing issues addressed by the district court, such as whether the one-person, one-vote doctrine may be relaxed as applied to fringe parties whose continued existence may depend on adherence to strong, centralized leadership; whether the states must be accorded more deference in the conduct of their own, as opposed to federal, elections; and whether Montano v. Lefkowitz, supra, would have been decided differently had the opportunity for a primary existed or if Bronx County was racially, ethnically and economically homogenous.
 
 
 22
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 LUMBARD, Circuit Judge (concurring):
 
 23
 I would affirm the dismissal of the complaint, substantially for the reasons set forth in Judge Weinstein's opinion, 471 F.Supp. 412 (E.D.N.Y.1979).
 
 
 
 [1]
 Both districts are located in Suffolk County. The official election results as tabulated by the Suffolk County Board of Elections were as follows:
 Second Senatorial District: Mrazek (D) -- 44,001
 Lack (R) -- 39,166
 Lack (C) -- 9,145
Forth Assembly District: Migliore (D) -- 13,178
 Wertz (R) -- 19,327
 Wertz (C) -- 4,109
 
 
 [2]
 New York Election Law § 6-120(3) (McKinney) provides in pertinent part:
 The members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, or of such other committee as the rules of the party may provide, . . . may, by a majority vote of those present at such meeting provided a quorum is present, authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party as provided in this section. . . .
 
 
 [3]
 New York is divided into counties, each of which is composed of a number of assembly districts which in turn are subdivided into election districts. As we noted in Seergy v. Kings County Republican County Committee, 459 F.2d 308, 310 (2d Cir. 1972):
 The election district is the basic unit of representation within the state's electoral system. Each of the major political parties gears itself to this structure, conducting primary elections in which candidates for party nomination are designated by means of petitions signed by a relatively small number of enrolled voters of the party. The enrolled members of the party then select candidates for the general election by casting primary ballots, with each voter's ballot having equal voting strength.
 
 
 [4]
 One town member of the Executive Committee represents the towns of Shelter Island and Southold, each of which is located in the eastern portion of the county. Consequently, the ten towns of Suffolk are present on the Executive Committee by nine town representatives
 
 
 [5]
 Citing official records, appellants note that as of 1977, there were 14,848 registered Conservatives domiciled in the five western towns of the county, and only 1,146 enrolled party members residing in the five eastern towns. As previously noted, notwithstanding this seemingly substantial discrepancy, the five western towns boasted five representatives on the Executive Committee, while the five eastern towns had four. The actual breakdown was as follows:
 western towns eastern towns
 1. Babylon 2383 Southold 173
 2. Brookhaven 4083 Shelter Island 84
 3. Huntington 2675 Southampton 596
 4. Islip 3932 Easthampton 111
 5. Smithtown 1775 Riverhead 182
 ------ -----
 Total 14,848 Total 1,146
 
 
 [6]
 Appellees maintain that both Lack and Wertz obtained signatures on their designating petitions containing in excess of 20 percent of the party enrollment in the districts in which they stood for election, a figure far greater than that required under pertinent provisions of the Election Law
 
 
 [7]
 Contrary to appellees' contentions at argument that an aggrieved non-party suitor for the nomination might seek approval of his candidacy from the county committee, it does not appear that there exists a practical way for such an individual to convene that body, or that once convened, the county committee has the power to rescind or repudiate a Wilson-Pakula certificate previously issued by its Executive Committee to a non-party candidate. Moreover, while there is no explicit prohibition against a party's issuing two such certificates, such an action would be politically self-defeating since it would ensure, contrary to the party's interests, a primary battle. Accordingly, it appears that in practice no candidate can receive a non-party cross-endorsement except through majority approval of the Executive Committee. See letter of E. Thomas Boyle to the Court, dated January 15, 1980
 
 
 [8]
 In Seergy we struck down a method of composing a political party's county committee whereby each election district within the county was allotted between two and four representatives, depending upon the number of enrolled party members in each such district as a proportion of the total number of party members in the county. Despite this flexibility, significant disparities in party concentration as between different election districts were not accurately reflected in the composition of the committee, and the system was found to violate the one-person, one-vote principle
 Judge Mansfield distinguished between the county committee's conduct of internal, administrative matters, which the party was free to dispose of in any manner it wished, and public matters, which were an "integral part of the election process," id. 459 F.2d at 313, the discharge of which implicated constitutional considerations:
 In those rare instances where committeemen perform public electoral functions (e. g., the nomination of candidates to fill vacancies or to run in special elections, or the giving or consent to candidacies by non-members of the party ), however, the county committee is required by the Equal Protection Clause to apply the "one-man, one-vote" principle, since in such cases it is unquestionably playing an integral part in the state scheme of public elections. See Maxey v. Washington State Democratic Committee, 319 F.Supp. 673, 679 (W.D.Wash.1970).
 Id., 459 F.2d at 314 (emphasis added).
 The Seergy Court did not elaborate on the rationale for this aspect of its holding. In Gray v. Sanders, 372 U.S. 368, 380, 83 S.Ct. 801, 808, 9 L.Ed.2d 821 (1963), where the Supreme Court held that "(t)he concept of political equality in the voting booth . . . extends to all phases of state elections," the opinion expressly declined to consider whether the one-person, one-vote doctrine was applicable to candidates chosen through intra-party deliberation rather than primary election. Id., 372 U.S. at 378 n.10, 83 S.Ct. at 807.
 Two answers have been suggested. It may be that in some localities the nomination by the predominant political party is tantamount to election. Cf. Montano v. Lefkowitz. Such a rationale plainly has no application to the facts of this case. A second possibility is that the nomination procedures of established political parties are an integral part of the election process because their nominees, unlike those of independent groups, are guaranteed a place on the ballot at the general election. Smith v. Allwright, 321 U.S. 649, 660, 64 S.Ct. 757, 763, 88 L.Ed. 987 (1944). Because this ensured access to the ballot constitutes a form of state action, nominating procedures must conform to constitutional requirements.
 
 
 [9]
 Appellants do not raise any issue concerning the legality of state laws or party rules precluding unaffiliated persons from compelling a primary election as between themselves and the non-party candidate authorized by the Executive Committee to seek the Conservative nomination. There exist obvious and legitimate state interests in safeguarding political parties from disruption or subversion through the attempts of unenrolled persons to capture their support, and the constitutional validity of rules insulating parties from such forays has long been acknowledged. As was well stated in Clark v. Rose, 379 F.Supp. 73, 76-78 (S.D.N.Y.1974) (three judge court):
 The Supreme Court has held that a state such as New York has a "legitimate interest in regulating the number of candidates on the ballot," Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972), and "in avoiding confusion, deception, and even frustration of the democratic process ..." that can result from an excessive number of non-party candidates. . . .
 If to open the Liberal Party to one non-member candidate were to open it to five, ten or twenty non-member candidates, voter confusion at a primary election would be a real possibility. The effect could be not only confusion but deception as contemplated by the Supreme Court in Jenness, supra, and Bullock, supra. Another party in New York, for example, might encourage or induce one or more of its members to seek authorization to appear on the Liberal Party primary ballot in order to undercut the chances of the candidate thought by the bulk of the Liberal Party members to best reflect their Party's philosophy and views. Conversely, to forbid all non-member candidates from running on, for example, the Liberal Party line would foreclose fusion tickets. New York, by enacting the statute, therefore, has reasonably sought to allow fusion tickets where desired without subjecting its political parties and their members to the debilitating effects of voter confusion and usurpation of the party organizations. We believe that the statute, therefore, meets a constitutionally legitimate state purpose within the electoral process.
 See also Lippitt v. Cipollone, 337 F.Supp. 1405, 1406 (N.D.Ohio 1971), aff'd, 404 U.S. 1032, 92 S.Ct. 729, 30 L.Ed.2d 725 (1972); Bendinger v. Ogilvie, 335 F.Supp. 572, 575 (N.D.Ill.1971); and see Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); Restivo v. Conservative Party of the State of New York, 391 F.Supp. 813 (S.D.N.Y.1975).
 
 
 [10]
 Judge Weinstein did not address the question of Mrazek's and Migliore's standing, in all likelihood because Fitzpatrick and Holzmacher are plainly proper parties to maintain this action. We note only that the issue of Mrazek's and Migliore's standing, by all accounts, has been determined adversely to them in the state courts and that decision is binding upon us under principles of res judicata. Angel v. Bullington, 330 U.S. 183, 190-91, 67 S.Ct. 657, 661, 91 L.Ed. 832 (1947). In any event, our own analysis confirms the soundness of that conclusion since the right appellants advance runs to the benefit of Conservative Party members only. Storer v. Brown, supra, 415 U.S. 724, 737, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714, and see Montano v. Lefkowitz, supra, 575 F.2d at 382 n.5. Moreover, in losing their elections, these individuals may have incurred damage, but we question whether such injuries possess sufficient causal nexus with the right allegedly infringed to endow them with standing. Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); see also Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)
 
 
 [11]
 We agree with Judge Weinstein that the evidence presented below does not conclusively establish that the composition of the Executive Committee violated one-person, one-vote standards in that it failed properly to reflect the greater population of Conservatives inhabiting the urban, western portion of the county. This is neither surprising nor dispositive, however, since the thrust of appellants' case is not malapportionment, but undue encroachment by non-resident party members upon what is asserted to be a purely local right. Appellants have attempted to cast their case in the mold of Montano v. Lefkowitz, not Seergy v. Kings County Republican County Committee, and as to their precise claim there can be no doubt that the evidence was adequate
 Thus, the Conservative Party members residing outside the Second Senatorial and Fourth Assembly Districts, through their representatives on the Executive Committee, had a substantial if not determinative impact on the selection of non-party candidates for those offices. Assuming arguendo the correctness of appellants' assertions that the endorsement of non-party members for intra-county state political office is a matter which must be restricted to voters in the affected districts, the level of participation in that process exercised by outsiders plainly constituted a degree of intervention, which would be intolerable when measured against the acceptable level of deviation from mathematical equality set forth in the apportionment cases. Even if it is postulated that the at-large members of the Executive Committee (i. e., the four county committee officers) represent the Second Senatorial and Fourth Assembly Districts (the propriety of which was, for congressional election purposes, left open in Montano v. Lefkowitz, supra, 575 F.2d at 386), it is nonetheless patent that the majority of the thirteen Executive Committeepersons represented Conservative Party constituencies unrelated to the affected political subdivisions. The degree of extra-district intervention cannot, therefore, be dismissed as "subtle."
 In another sense, however, the evidence adduced below may have been insufficient to substantiate even the narrow theory relied upon by appellants: the record simply does not indicate the exact constituency being represented by the members of the Executive Committee. Party nominating devices are functionally distinguishable from primary elections and entail somewhat different considerations with respect to this question. Although Seergy v. Kings County Republican County Committee mandates the application of the one-person, one-vote principle to a party's nominating procedure, see footnote 8 supra, it does not go so far as to hold that a delegate to that convention or caucus may represent only the enrolled party members in a given district. Other courts have held that acting in a nominating capacity, a delegate may speak for a group broader than simple party membership: rather, the constituency may properly be defined as a mix of the district's total population, unenrolled party sympathizers, affiliated party members and certain other factors such as the importance of the district to the party and the past or foreseeable success of the party in that locale. Ripon Society, Inc. v. National Republican Party, 525 F.2d 567 (D.C.Cir.1975) (en banc), cert. denied, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976); Bode v. National Democratic Party, 452 F.2d 1302 (D.C.Cir.1971), cert. denied, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972); Georgia v. National Democratic Party, 447 F.2d 1271 (D.C.Cir.), cert. denied, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971). The parties are best situated to define the proper constituencies of their nominating delegates, and these determinations should not be invalidated unless such definitions are utilized to exclude or disadvantage discrete groups or minorities, see, e. g., City of Mobile v. Bolden, --- U.S. ---- - ----, 100 S.Ct. 1490, 1499, 64 L.Ed.2d 47 (1980).
 In the present action we are not informed as to the precise constituencies which Executive Committee members are envisioned as representing. Since appellees' counsel has not suggested otherwise, however, we have proceeded under the assumption that the Executive Committee members speak only for enrolled party members.