Mary MULHOLLAND, Michele A. Danels, Craig A. Seeman and Bennie Mendez, as officers of the Independence Party County Committee of Kings County and Independence Party County Committee of Kings County, Plaintiffs,

v.

Weyman A. CAREY, Ronald James D'Angelo, Frederic Umane, Douglas A. Kellner, Ferdinand C. Marchi, Seymour Sheldon, Gertrude Strohm, Vincent J. Velella, Kathleen Wagner and Paul Mejias, Commissioners of Elections constituting the Board of Elections in the City of New York, Carol Berman, Owen Smith, Evelyn Aquila and Helen Donohue, Commissioners of Elections constituting the New York State Board of Elections and Dennis Vacco, Attorney General of the State of New York and Charles F. Knapp, Gayle E. Weintraub, Alida Siegel, objects and Jack R. Essenberg, Chairperson and James F.X. Doyle, Secretary of the Independence Party of the State of New York State Committee and Joan Millman, John Johnston and Ablert Asfazodour, candidates, Defendants.

No. 97–CV–0684 (FB).

United States District Court, E.D. New York.

Sept. 8, 1997.

Dominick A. Fusco, Bronx, NY, for Mary Mulholland, Michele A. Danels, Craig A. Seeman, Bennie Mendez, Independence Party County Committee of Kings County.

Joel Graber, Asst. Atty. General Office of the Atty. General, New York City, for New York State Bd. of Elections.

James F. X. Doyle, Bohemia, NY, for Doyle.

Harry Kresky, Knapp & Weintraub, New York City, for Knapp and Weintraub.

Paul Marks, Asst. Corp. Counsel Office of the Corp. Counsel, New York City, New York City Bd. of Elections.

Michael Freeman, Hymowitz & Freeman, New York City, for Siegel.

BLOCK, District Judge.

Presently before the Court is plaintiffs' motion for a preliminary injunction. Plaintiffs are members of the Independence Party

of New York from Kings County and seek to preclude the New York City Board of Elections ("Board of Elections") from removing the names of six candidates from the ballot for the Independence Party primary election to be held on September 9, 1997. For the reasons stated below, plaintiffs' motion is denied.

## I. BACKGROUND

This is the second request for preliminary injunctive relief brought by plaintiffs. In a Memorandum and Order issued on February 19, 1997 ("February Order"), the Court rejected plaintiffs' request for an order directing the New York City Board of Elections ("Board of Elections") to place plaintiff Craig A. Seeman on the ballot as a candidate of the Independence Party for a special election held on February 18, 1997. The February Order concluded that the State Committee of the New York Independence Party ("State Committee") acted in accordance with its rules and the New York Election Law in deciding not to nominate any candidate to represent the Independence Party in the special election. Most relevant to the present motion, the February Order noted that since plaintiffs had admittedly failed to legally establish a county committee under New York Election Law § 2-104(3), the State Committee had discretion under its rules to choose not to nominate candidates for the special election.

### A. Formation of the New York State Independence Party

In order to become a recognized political "party" in the State of New York, an organization "at the last preceding election for governor [must have] polled at least fifty thousand votes for its candidate for governor." New York Election Law § 1-104(3). Based on the votes polled in the 1994 gubernatorial election, the Independence Party thereupon became a recognized political party under the Election Law. As such, the Independence Party was empowered to form a state committee. The first meeting of the New York Independence Party State Committee was held on September 19, 1996.

### B. County Committees and the 25% Rule

Establishing a recognized political party also entitles that party to form county committees throughout the State. The creation of such county committees is governed by Election Law § 2-104. Section 2-104(3) [hereinafter "25% rule"] provides that "a county committee of a party shall be legally constituted if twenty-five per centum of the committeemen required to be elected in such county ... have been elected."

Although a recognized party has the legal authority to create county committees, it is possible that, in certain counties, a minor party may not have enough members to satisfy the 25% rule. Section 2-104(1) determines the total number of seats for a party's county committee by, at a minimum, establishing two seats for each election district within the county. For example, if a particular county has 200 election districts, § 2-104(1) would mandate that the county committee have at least 400 committeepersons. In order to form a legally constituted county committee, therefore, there would have to be at least 100 committeepersons. Thus, if a minor party has only enrolled a few voters in that county, it may be either legally or pragmatically impossible to form a county committee. Plaintiffs contend that they fall into that category, as they have been unable to constitute a Kings County Independence Party County Committee due to the small number of enrolled members of the Independence Party in Kings County relative to the total number of requisite county committee seats.

### C. Plaintiffs and the Six Candidates at Issue

The plaintiffs are four enrolled members of the Independence Party who are the self-anointed "officers" of an entity they term the "Independence Party County Committee of Kings County." However, this entity is admittedly not a legally constituted county committee pursuant to the 25% rule. Plaintiffs nevertheless have moved this Court, as officers of this non-entity, to invalidate the Board of Elections' removal from the ballot of six candidates whom they have submitted to the Board of Elections as candidates for

the Independence Party primary election to be held on September 9, 1997. The Board of Elections rejected these "candidates" because they were not put forth by a legally constituted Independence Party county committee.

Although the plaintiffs are all members of the Independence Party, the six candidates plaintiffs seek to place on the ballot for the Independence Party primary are not enrolled members of the Independence Party [hereinafter "non-party candidates"]. The nomination of non-party candidates for a party's primary election is governed by Election Law § 6–120, which sets forth the basis upon which authorizations, known as "Wilson–Pakula" authorizations, can be issued for a non-party candidate to obtain a place on the ballot for a primary election. Section 6–120(3) provides that: "The members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made, or of such other committee. as the rules of the party may provide ... may authorize the designation or nomination" of a non-party candidate. The practical effect of this provision is that if the plaintiffs did represent a legally constituted county committee, they would have the power to issue Wilson–Pakula authorizations.

### D. Contentions of the Parties

Plaintiffs contend that the 25% rule is unconstitutional because it violates their First and Fourteenth Amendment rights to associate in order to select and support political candidates of their own choosing. Defendant Board of Elections and defendants Charles F. Knapp ("Knapp"), Gayle E. Weintraub ("Weintraub"), Jack R. Essenberg ("Essenberg"), and James F.X. Doyle ("Doyle") contend in separate memoranda of law that a preliminary injunction should not issue because plaintiffs lack standing to bring this action. In addition, defendants Knapp, Weintraub, Essenberg, and Doyle advance three further arguments: (1) that the motion should be denied for the same reasons articulated in the February Order; (2) that the motion is grounded in numerous misrepresentations; and (3) that plaintiffs' constitutional rights of association have not been infringed since non-party candidates have several other means by which they can be placed on the ballot.

## II. PRELIMINARY INJUNCTION STANDARD

In order to obtain a preliminary injunction, a plaintiff must show: (1) a threat of irreparable injury; and (2) either (a) a probability of success on the merits, or (b) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir.1997) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

However, a plaintiff must meet the "higher" probability of success on the merits prong (as opposed to the "serious questions plus balance of hardships" prong) when plaintiff seeks to "stay[ ] 'governmental action taken in the public interest pursuant to a statutory ... scheme.'" *Time Warner*, 118 F.3d at 923 (quoting *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir.1996)). Since the Board of Elections, by enforcing the 25% rule, is acting pursuant to a statutory scheme in the public's interest, this principle is applicable. Nevertheless, even under the less stringent "serious questions" standard, plaintiffs' motion for preliminary injunctive relief would be denied.

## III. DISCUSSION

### A. Standing

In support of their argument that plaintiffs lack standing, defendants raising that issue contend that plaintiffs cannot show an "injury-in-fact" because: (1) plaintiffs do not allege that they signed the designating petitions for any of the candidates whom they claim will not appear on the ballot; and (2) plaintiffs are not eligible to vote for most of the candidates who they claim were unlawfully removed from the ballot because they do not reside in those candidates' council districts.

The Court has serious doubts as to plaintiffs' standing to bring suit, but it has not

been presented with sufficient credible facts to conclusively resolve this issue. However, in light of the Court's resolution of the merits against plaintiffs, there is no need to flush out the standing issue.

## B. Probability of Success on the Merits

■ For purposes of this motion, the Court will assume that the 25% rule, as applied to the plaintiffs, makes it pragmatically impossible for plaintiffs to form a county committee in Kings County. Nonetheless, plaintiffs' purported constitutional right to place the non-party candidates of their choice on the Independence Party primary election ballot has not been infringed.

### 1. *The Applicable Conceptual Framework*

The Supreme Court recently addressed the nature and scope of political party members' constitutional rights of association in *Timmons v. Twin Cities Area New Party*, ––– U.S. –––, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997). *Timmons* upheld the constitutionality of so-called "anti-fusion" laws, which prohibit a candidate from appearing on the ballot as the representative of more than one party. The Supreme Court articulated the conceptual framework applicable to election law challenges on associational rights grounds as follows:

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.

*Id.* at –––, 117 S.Ct. at 1370 (internal quotations and citations omitted).

The Court defined the associational right at issue as "the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Id.* at –––, 117 S.Ct. at 1369. The Court explicitly recognized a "political party's 'discretion in how to organize itself, conduct its affairs, and select its leaders.'" *Id.* at –––, 117 S.Ct. at 1369 (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 230, 109 S.Ct. 1013, 1024, 103 L.Ed.2d 271 (1989)).

Nevertheless, the Court concluded that plaintiffs' inability to nominate a candidate who already appeared as another party's candidate did not severely burden their associational rights since the anti-fusion provisions "do not restrict the ability of the ... Party and its members to endorse, support, or vote for anyone they like. The laws do not directly limit the Party's access to the ballot. They are silent on parties' internal structure, governance, and policy-making." *Id.* at –––, 117 S.Ct. at 1372. Most important to the present dispute, the Court held: "[t]hat a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's association rights." ––– U.S. at –––, 117 S.Ct. at 1370.

### 2. *Application of the 25% Rule Does Not Severely Burden Plaintiffs' Associational Rights.*

If the six candidates were to be on the ballot as representatives of another party or as independent candidates, plaintiffs' challenge would fall squarely under, and would be rejected on the basis of, *Timmons*. However, the Court assumes such is not the case and, furthermore, that their failure to obtain Wilson–Pakula authorizations is the only impediment to their running for election as Independence Party candidates. From this standpoint, the Court considers whether plaintiffs' inability to form a county committee for purposes of issuing a Wilson–Pakula authorization on behalf of any of these candidates rises to the level of a severe restriction on plaintiffs' associational rights. The Court determines that the burden does not rise to that level.

As in *Timmons*, plaintiffs retain several vehicles through which they can "campaign

for, endorse and vote for" the candidates of their choice, even if they are unable to form a county committee because of the 25% rule. *Timmons,* —— U.S. at ——, 117 S.Ct. at 1372. Initially, it would be far from a severe burden for plaintiffs to help the candidates obtain the requisite signatures needed to appear as independent candidates. *See* Election Law § 6–142 (governing petitions for independent nominations). Moreover, unlike the plaintiffs in *Timmons,* plaintiffs have a number of options available to assist the non-party candidates to obtain a place on the Independence Party's primary ballot. They could attempt to prevail upon the State Committee to issue Wilson–Pakula authorization. Indeed, Section 6–120(3) of the Election Law provides, in pertinent part, that non-party members may be nominated by the committee representing the subdivision for which the election is to be held, *"unless the rules of the party provide for another committee."* (Emphasis added). The party rules of the New York Independence Party provide that "[i]n the event of ... [the] failure to organize an Independence Party County Committee ... in any County in the City of New York the state executive committee may authorize a person for any office who is not a member of the Independence Party." Rules of the New York State Committee of the Independence Party, Art. XII, § 6. If this avenue should prove unsuccessful, plaintiffs could seek to change the composition of the State Committee to comport with their views. Plaintiffs could also recruit and enroll enough new members into the Independence Party in order to comply with the 25% rule. Finally, plaintiffs could convince the non-party candidates to enroll in the Independence Party. *See Timmons,* —— U.S. at —— ——, 117 S.Ct. at 1370–71 ("[plaintiffs are] free to try to convince [the candidate] to be [their party's] candidate") (citing *Swamp v. Kennedy,* 950 F.2d 383, 385 (7th Cir.1991)). The Court therefore determines that plaintiffs' inability to authorize a non-party voter as a candidate by virtue of the 25% rule does not constitute a severe restriction on their constitutional rights within the conceptual framework of *Timmons.*

### 3. *Application of the 25% Rule Serves Important State Interests.*

■ Since the restriction on plaintiffs is not severe, all that needs to be determined is whether the 25% rule, as applied to plaintiffs, is justified by New York's important regulatory interests. The Wilson–Pakula law was designed "to protect the integrity of political parties and to prevent the invasion into or the capture or control of political parties...." *Clark v. Rose,* 379 F.Supp. 73, 77 (S.D.N.Y.1974) (quoting *Werbel v. Gernstein,* 191 Misc. 275, 78 N.Y.S.2d 440 (Sup.Ct. Kings Co.1948)), *aff'd,* 531 F.2d 56 (2d Cir. 1976). Thus, the rights of non-party candidates seeking Wilson–Pakula authorizations, and of party voters seeking to place non-party candidates on the ballot, yield to the "compelling state interest [in] avoid[ing] voter confusion and possible weakening and even usurpation of party organization." *Clark,* 379 F.Supp. at 77.

Voters, political parties, and the state share an interest in promoting viable political parties. Indeed, if any small group of party members could legally constitute a county committee and authorize non-party candidacies, chaos would invariably follow. *See Timmons,* —— U.S. at ——, 117 S.Ct. at 1369 ("[I]t is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."). The *Timmons* Court also recognized that states have interests "in avoiding voter confusion and overcrowded ballots, preventing party-splintering and disruptions of the two-party system, and being able to clearly identify the election winner." *Id.* at ——, 117 S.Ct. at 1372. In fact, "the States' interest permits [states] to enact reasonable election regulations that may, in practice, favor the traditional two-party system ... and that temper the destabilizing effects of party-splintering and excessive factionalism." *Id.* at ——, 117 S.Ct. at 1374.

Accordingly, since plaintiffs' inability to form a county committee due to application of the 25% rule does not severely burden their associational rights, and is justified by New York's important regulatory interests, plaintiffs have failed to establish either a

probability of success on the merits or serious questions going to the merits of their claims.

## IV. CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion for preliminary injunctive relief.